F. E. CRANE v. P. P. ELDER, *as Administrator of the estate of E. E. Fuller, deceased.*

PROMISSORY NOTES — *Representation* — *Opinion.* A statement made by a party, to induce another to exchange a dwelling-house for promissory notes, "that the notes were perfectly good," under the circumstances of this case is a representation, and not the expression of a mere opinion.

*Error from Franklin District Court.*

THE opinion states the nature of the action and the material facts. Judgment for plaintiff, *Elder,* at the October term, 1888. The defendant, *Crane,* brings the case to this court.

*J. W. Deford,* and *H. P. Welsh,* for plaintiff in error.

*W. Littlefield,* for defendant in error.

Opinion by SIMPSON, C.: Action by Fuller against Crane for damages for deceit in the sale of certain promissory notes. The petition alleges that on June 30, 1886, he conveyed a "residence property," on Walnut street, in Ottawa, worth $2,200, to defendant, in exchange for "about 100 promissory notes," then held by him, given by parties residing in "various parts" of Kansas, for "life insurance in the Temperance Mutual Benefit Union," and ranging in amounts from $13 to $60, "payable to bearer," and transferred by Crane to Fuller, "by delivery." The misrepresentations averred are:

"That said notes were all perfectly good, and would be paid promptly when due, and that Crane had, before that time, sold and transferred to the firm of Hunt & Kelly, contractors and builders, of Ottawa, Kas., a large number of the same class of notes, that is, notes given for life insurance in the said Temperance Mutual Benefit Union, to wit, about $7,000 in amount, and that they had collected nearly the entire amount of them, and that said notes had been paid promptly, and without trouble to the holders, and he referred the plaintiff to the said firm of Hunt & Kelly, 'to substantiate' the truth of his statement that the notes he had transferred to them had been paid

promptly, and without any trouble in collecting; that thereupon the said plaintiff called upon Mr. G. A. Kelly, of the firm of Hunt & Kelly, and made inquiry of them in relation thereto, and was informed by said Kelly that the firm of Hunt & Kelly had purchased notes from the said defendant to the amount of $7,000, and that nearly the entire amount of the notes so purchased by them were paid promptly, and with but little trouble to them; that there was only about $200, out of said $7,000 of notes, unpaid; that said plaintiff did not inquire of said Kelly what class or kind of notes they were that the firm of Hunt & Kelly had purchased from said Crane, because of the aforesaid statement made to him by the said defendant that they were of the same class with those he was offering to transfer to the plaintiff, that is, notes taken for life insurance in the Temperance Mutual Benefit Union, but relied implicitly on said statement, believing it to be true, and had no thought that they might be of a different class.

"2. In fact, the notes taken by Hunt & Kelly were 'lightning-rod notes,' and a 'different class from' those transferred, as the defendant well knew, etc.°

"3. When the benefit union took the notes, Crane was its superintendent, had 'general charge of the business of soliciting insurance,' and 'of taking said notes;' but they were, 'or a large portion of them were, obtained from the makers by fraud and misrepresentation,' etc., as defendant well knew, and so could not be collected, although plaintiff has made great effort to collect them, and brought suits on a number of them, but was defeated, and has incurred expense and loss in such attempts; that they were·not good, or collectible, as defendant always well knew.

"4. Fuller was ignorant of all these things, when he purchased the notes; had no 'means at hand of ascertaining the facts, but relied solely and entirely on Crane's statements;' was 'induced thereby,' etc.; and otherwise would not have done so; that he has received 'no consideration whatever,' for his 'residence property,' and has been damaged $3,000."

Crane's answer was: (1) A general denial, except as admitted. (2) Alleges that he did exchange the notes for the realty, but that at the time of the dealing it was "well understood and agreed" by Fuller and himself that it was not worth in ·cash over $1,000; that some of the notes might not be collectible; that the "residence property" was valued at

$2,200, "so as to equalize and compensate for any loss which Fuller might sustain by reason of his inability to collect some of the notes, but that he has collected on the notes more than the cash value of the house and lot. "The reply was a general denial. On these pleadings, the case was tried by a jury, October 30, 1888. The defendant "objected to the introduction of any evidence" under the petition, for the reason that it "does not state facts sufficient to constitute a cause of action." Objection overruled. The testimony was then adduced; the court charged the jury; a verdict of $300 was found for the plaintiff, judgment entered, a motion for a new trial overruled, and a case-made brought to this court.

The first question is, does the petition state facts sufficient to constitute a cause of action? To support the contention that it does not, counsel for plaintiff in error insist that the statement, "that said notes were all perfectly good and would be promptly paid when due" is only an expression of opinion, and not a representation. When this statement is taken and considered in connection with other averments in the petition, notably that which alleges that Crane "had sold a large number of the same class of notes to Hunt & Kelly, and they had collected nearly the entire amount," referring Fuller to them for verification of this statement, and that these notes were taken on the strength of and in full reliance of these representations, and they were false, and Crane knew them to be false, the petition states a cause of action. We think that the statement that "the notes were all perfectly good" is a representation, and not the expression of a mere opinion. Crane professed that they belonged to him; were his property; that he had taken them; "that they were as good notes as he had ever taken;" and he made that and other statements of like import to induce Fuller to make the exchange; made them with the intent to induce Fuller to rely on the truth of his statements concerning the notes. This construction accords with common usage and the ordinary course of business in such affairs. No sane man will buy a large number of promissory notes, without knowledge of the financial condi-

tion of the persons who executed them, on the strength of an opinion merely that they are good. Crane was in possession of the notes; they were taken by his agents or under his superintendency; he had, or ought to have had, knowledge as to whether they were good or not; Fuller was not in a condition to know whether they were good or not; and it seems to us, under these circumstances, that the statement of Crane was a representation, and not the mere expression of an opinion. We do not care to split hairs, or try to reconcile conflicting authorities on this question. The evidence at the trial, and all the circumstances of the transaction, impress upon our minds that a fraud was perpetrated on Fuller. We think, too, that Crane put Fuller off his guard by his reference to Hunt & Kelly, and that, after Crane had expressly asserted that Hunt & Kelly bought the same class of notes, he cannot now be allowed to say to Fuller, "you ought to have found out from Hunt & Kelly that I deliberately lied to you."

The evidence objected to about the interview with the bank officers at Cottonwood Falls is the evidence of Fuller as to statements made to him by Crane. It is true that these statements are not alleged in the petition in the exact words, but substantially they are statements that the notes were "perfectly good," because the bank officers said so. We do not understand that the rules of pleading in cases of this character require that, where separate and distinct statements are made at various times, each must be alleged, or else only one can be proved. We take the rule to be that the distinct misrepresentation must be alleged, and when so incorporated into the pleadings it can be proved to have been made at different times.

The pleadings and transcripts of cases brought by Fuller against the makers of some of these notes to enforce payment are admissible in evidence for several purposes. They show that the particular notes sued upon could not be collected. They show an effort on the part of Fuller to do so; that he had been at trouble and expense in the attempt

to do so; and they tend to show that the representations made by Crane, that the notes were "perfectly good," were false. They are not in any sense an adjudication against Crane. There is nothing conclusive about them as evidence, but they do make a *prima facie* case against Crane that these particular notes are not perfectly good. There is no prejudicial error in the ruling of the trial court on the question and answer from Crane's deposition in the cases of Fuller *v.* Crawford and Fuller *v.* Schimpf. While some general criticism is indulged in as to the instructions by counsel for plaintiff in error, they content themselves with a general attack, rather than pointing out their special infirmities, and cite no authorities to sustain any claim they make. The truth is, that the real quarrel of the plaintiff in error is with the jury; but as we are compelled to say that the verdict is sustained by the evidence, that it has the approval of a painstaking and laborious trial court, and that the general result is in accordance with natural justice, we can afford no relief, because we do not find any prejudicial error in the record that would justify us in sending the case back for a new trial.

We recommend an affirmance of the judgment.

By the Court: It is so ordered.

All the Justices concurring.