### J. C. INGRAM ET AL. v. W. L. ABBOTT ET AL.

Delivered November 14, 1896.

**1. Pleading—Petition—Joinder of Counts.**

A count in form of trespass to try title and a second count alleging fraud and misrepresentation, and praying for rescission of a contract and cancellation of deeds, are properly joined in one petition, where taken together they constitute a suit to rescind a sale and recover possession of land.

**2. Fraudulent Representations—Agreement as to Damages—Rescission.**

Where a stipulation for damages in the event of breach extends only to a part of an agreement induced by fraud and misrepresentation, it will not prevent a rescission of the entire contract for such misrepresentation.

**3. Same—Waiver—Knowledge of Part of the Fraud.**

Where one induces another to purchase promissory notes by means of fraudulent representations as to the solvency of the maker and also as to the value of the land on which they are secured, the purchaser cannot be held to have waived the fraud when he subsequently tries to sell the notes. after learning of the insolvency of the maker, but before he learns the value of the land.

ERROR from Parker. Tried below before Hon. J. W. PATTERSON.

*John W. Wray*, for plaintiffs in error.—If Abbott was misled by any false representations or statements of Ingram in any material matter relating to the said trade, it was his duty, as soon as he learned the truth, with all reasonable diligence to disaffirm the contract and abandon the transaction, and to give Ingram an opportunity to rescind, so that each might be restored to his original position; and if, after discovering the untruth of the representations, or after having sufficient knowledge to put him upon inquiry, which if it had been prosecuted would have discovered to him the truth, he conducted himself with reference to the transaction as though it was still subsisting, by offering the notes for sale or trade and dealing with and handling the property as his own, he thereby elected to affirm the contract and cut himself off from any opportunity of relief by rescission. 2 Pomeroy's Equity, sec. 897; Masson v. Bouvet, 1 Denio, 69; Dawson v. Sparks, 1 Posey's U. C., 735; Taylor v. Short, 107 Mo., 384; Lewis v. Land Co., 28 S. W. Rep., 328; Lockwood v. Fitts, 7 So. Rep., 467, Grimes v. Sanders, 93 U. S., 64; Strong v. Strong, 5 N. E. Rep., 799; Cain v. Guthrie, 8 Blackford (Ind.), 409; Hunt v. Blanton, 89 Ind., 38; Arnold v. Hogerman, 17 Atl. Rep., 95; Parmle v. Adolphe, 28 Ohio St., 17.

*H. S. Moran* and *G. A. McCall*, for defendants in error.

HUNTER, ASSOCIATE JUSTICE.—This suit was filed on the 20th day of July, 1894, by W. L. Abbott and wife against J. C. Ingram and his wife Susan R. Ingram, to rescind a contract for the sale of lands and cancel certain deeds made in pursuance thereof, and to recover title and possession of the lands.

The grounds for rescission were alleged to be fraudulent representa-

tions made by J. C. Ingram on or about the 29th day of March, 1893, in that he falsely and fraudulently represented to W. L. Abbott, who was the owner of the lands sued for, that six certain vendor's lien notes, of $1166.66 each, made by J. G. Kenan to J. C. Ingram and secured by six certain sections of land in Garza County, Texas, were as "good as gold" and worth their face value; that he well knew Kenan, and that he was a man of great wealth, and was perfectly solvent, and able to pay said notes and would do so, and that he was well acquainted with the lands upon which the notes were liens, and that they were well worth from $2.50 to $5 per acre; that he (Abbott) did not know Kenan, nor whether he was solvent or not, nor where he resided, and was wholly unacquainted with the lands or their value, they being situated in a distant county, about two hundred miles from him, off the railroads, and that he relied wholly on the statements of said Ingram, and believing them to be true, was induced thereby to convey the lands sued for to Susan R. Ingram, in consideration for said six notes and said Ingram's note for $536; that said notes were transferred to him without recourse, and that Ingram is insolvent; that Ingram informed him of a mortgage on the six sections to the J. B. Watkins Mortgage Co. of Dallas of $2900, due in 1901, but stated that Kenan had assumed to pay said mortgage and interest, and was able to and would do so; that all of said statements were untrue, and were falsely, fraudulently and deceitfully made, for the purpose of inducing him to accept said notes and convey the lands sued for to Mrs. Ingram, and they did induce him so to do; that he did not learn of the falsity of said statements and representations until in the fall of 1893 or spring of 1894, and that he then offered to rescind the contract and return to Ingram all the notes, which proposition was refused.

The defendants answered by a general demurrer and special exceptions: That the representation alleged to have been made by Ingram in reference to the value of the land "was mere trading talk and a matter of opinion, upon which the plaintiffs had no right to rely; and because the alleged representation of the solvency of Kenan and goodness of the notes are not statements of present facts, but are matters of opinion, prediction and belief, upon which the plaintiffs had no right to rely, because the alleged representation that they were worth their face value and would be paid was also a matter of opinion as to the first clause, and the second was a matter of prediction, and the expression of a belief and not a statement of a present fact, upon neither of which were the plaintiffs authorized to rely."

The allegation that Ingram represented that Kenan had agreed to, was able to and would pay off the mortgage, principal and interest, was excepted to on substantially the same ground.

The issue of laches was also raised by special exception, as well as misjoinder of causes of action in that the petition contained two counts, the first in the form of an action of trespass to try title, the second

setting out all the facts and asking for a rescission of the contract, of the deeds, and recovery of the lands.

The defendants (appellants) also filed a general denial, and specially plead that it was agreed that, in case Kenan failed to pay the mortgage debt to the Watkins company, defendants would pay $1000 of it, or deliver back the deed to a four and a half acre tract of land valued at $1000, which plaintiffs had conveyed to them in the trade; and that this agreement, which was embodied in the deed made to defendants, fixed and established the extent of defendants' liability in the event of such default, and that after being notified of Kenan's default in payment of the interest on the Watkins debt, he had returned the deed to the four and a half acres of land to the plaintiffs, the same having never been recorded, and offered to make a deed and deliver it to defendants for the said tract; that after plaintiffs knew of the supposed and averred fraudulent representations, they kept and retained possession of the personal property received in exchange for said lands, and yet have the same, and have elected to stand by the contract and required defendants to pay the guarantee of $1000, or the four and a half acres of land, which defendants did and offered to do, by returning the deed and offering to reconvey the said tract; and have elected to stand by the contract, in that said Abbott, after discovering the supposed and alleged fraudulent representations, used and offered to dispose of said notes as his own property and estate; that in December, 1893, Abbott accepted a deed from Kenan to the six sections of land so mortgaged, and upon which the six notes were a vendor's lien, in full satisfaction of Kenan's liability on the six notes, and kept and retained this deed until June, 1894, and also the notes, asserting ownership thereof and trying to sell the same.

· The case was tried by the court, who filed the following conclusions of fact and of law:

"1   I find that in March, 1893, the plaintiff W. L. Abbott was the owner of the land described in the plaintiff's petition, and lying and being situated in the counties of Llano and Parker, in the State of Texas, and that the defendant J. C. Ingram was the owner of six promissory notes for $1166.66 each, being the same notes set out and described in plaintiff's petition, which said notes were given by one J. G. Kenan, and were payable to J. C. Ingram; that same were secured by a vendor's lien on six sections of land in Garza County, Texas; that there was a prior lien on said six sections of land in favor of the J. B. Watkins Land Mortgage Company for $2900.

"2.   I find that the lands so owned by the plaintiff were then and are now worth $6000, and the said six sections of land were then and are now worth $1.25 per acre.

"3.   I find that J. G. Kenan, the maker of said notes, was then and is now and has ever since been wholly insolvent.

"4.   I find that plaintiff then lived in Parker County, Texas, and defendant J. C. Ingram lived in Fort Worth, Texas, and said Kenan lived in Seymour, Texas, about 200 miles from residence of plaintiff;

that plaintiff W. L. Abbott was not acquainted with the said Kenan, nor with his financial condition, nor was he acquainted with said six sections of land, or the value of the same.

"5. I find that as the plaintiff was then an old man, he was desirous of exchanging his said property for something that would yield a regular income, and I find that said six notes so owned by the defendant Ingram bore interest at the rate of eight per cent per annum, payable annually.

"6. I find on or about the 27th of March, 1893, the plaintiff W. L. Abbott traded his said land in Llano and Parker Counties to the said J. C. Ingram for the said six notes, and a note of said J. C. Ingram for $536, same being amount of interest on said six notes for 1901, which interest had been paid on said notes, and that said Abbott, at the instance of J. C. Ingram, deeded said lands to defandant Susan R. Ingram, the wife of said J. C. Ingram, and the said Ingram transferred and endorsed said six notes to Abbott, the wife of said W. L. Abbott.

"7. I find that to induce the said W. L. Abbott to make said trade, the said J. C. Ingram falsely and fraudulently represented to said W. L. Abbott that the said J. G. Kenan was perfectly solvent, and that said six sections of land were very valuable, and that the said six notes were as good as gold. I find that said W. L. Abbott relied on said representations, and was induced by said representations to deed his said lands to the said Susan R. Ingram, and to accept said notes from the said J. C. Ingram; that Ingram knew at the time he made such representations that they were false and untrue. I find that said six notes were not and are not worth more than $1900.

"8. I find that the note due the said land and mortgage company has never been paid, and that the same is still a prior lien on the said six sections of land in Garza County; that there is also one year's interest due and unpaid on said $2900. I also find that a note for said $2900 had been given by the said Kenan to said land and mortgage company, and had also given said land and mortgage company a deed of trust on said six sections of land to secure the payment of said notes. I find that the said Kenan was then and is now insolvent.

"9. I find that after the trade had been consummated the said J. C. Ingram represented to the said Abbott that one Price of Fort Worth had been trying to negotiate said notes from said Ingram; and advised the said Abbott to correspond or communicate with the said Price about disposing of them for said Abbott; that afterwards Abbott employed said Price to negotiate the said notes for him—Abbott.

"10. I find that in 1892 the said J. G. Kenan had made default in paying a part of the interest on said $2900 due said land and mortgage company, and that the said Ingram had paid the same.

"11. I find that soon after the trade between the plaintiff and defendant was consummated the plaintiff learned from the said Kenan that he was not able to pay the interest on the $2900 due said land mortgage company; that said Kenan some time during the summer of 1893

wrote to plaintiff W. L. Abbott that he could not pay the interest if his life depended on it, and on another occasion wrote him that he could not pay same unless he could take up a subscription and get the money in that way. I find that plaintiff Abbott paid the interest due the mortgage company on said $2900 for 1893.

"12. I find that after said W. L. Abbott had received said letter from said Kenan as to his financial condition, he, Abbott, employed one Price of Fort Worth to sell or negotiate the said notes for him; that this Price was the same one that the said Ingram had referred the plaintiff to. I also find that plaintiff after receiving said letters from said Kenan, made several efforts to dispose of said notes.

"13. I find that in February, 1894, while plaintiff was in Fort Worth or Dallas trying to sell or dispose of said notes, he was informed that the said six sections of land in Garza County was not worth more than $1.25 per acre. I find that before plaintiff traded for said notes he was informed by said Ingram that said lands in Garza County were well worth $2.50 per acre. I find that said plaintiff, soon after he was informed that said lands were not worth more than $1.25 per acre, had an attorney to write to Seymour to inquire about the financial condition of said Kenan, and through said attorney learned that said Kenan was hopelessly insolvent. I find that soon after this, and before the institution of this suit, the said plaintiff met the said defendant J. C. Ingram and demanded a rescission of the said contract, and then and there offered to rescind the same, and that said Ingram refused to rescind the same.

"14. I find that the plaintiff is still the owner and holder of all the notes he received from said Ingram, and is ready to turn them over to the said Ingram in as good condition as when he, Abbott, received the same, with every dollar of interest that has accumulated thereon since the transfer; that the plaintiff has collected no part of said interest.

"15. I find that after the plaintiff Abbott was fully informed as to the financial condition of the said Kenan and as to the value of said lands in Garza County, he never made any further effort to negotiate the notes, but that he as soon thereafter as he met the said J. C. Ingram, offered to rescind the trade.

"*Conclusions of law.*—As the plaintiff Abbott was induced by the false and fraudulent representations of J. C. Ingram to trade for said notes, and as the same are not and were not worth one-third of what Ingram represented them to be worth, and as the plaintiff still has all the property he received from said Ingram, and as the same is in as good condition and as valuable as when the plaintiff received the same, and as the plaintiff since he became fully apprised of the condition of the said Kenan, and the value of said six sections of land in Garza, has never exercised any acts of ownership over said notes, and as the plaintiff upon being fully informed in the premises offered to rescind the trade, the plaintiff is now entitled to a decree of court rescinding

said contract, and for a recovery of the lands he conveyed to Mrs. Susan R. Ingram, the wife of J. C. Ingram, in exchange for said notes."

Appellants have excepted to several of these conclusions of fact and assigned errors thereon, which has compelled us to carefully examine the evidence, but we are unable to say that any of the conclusions are not sustained by the evidence; and we therefore approve all of said conclusions and adopt them as our own, and overrule all the assignments of error which call in question the correctness of the conclusions of fact found by the District Court.

The second assignment of error, which complains of a misjoinder of causes of action, based upon the fact that plaintiffs' petition contained one count in form of trespass to try title and a second count alleging fraud and misrepresentation on the part of Ingram, inducing the trade, and praying for rescission of the contract and cancellation of the deeds, must be overruled. It is entirely proper to embrace both features in the same petition. The objection that the count to recover the lands preceded the one showing the fraud upon which the recovery was based, goes more to the matter of logical order of statement of facts than to substance of matter plead in the two counts. They are really but one, and taken together constitute a suit to rescind on the ground of fraud, and to recover possession of the land.

The sixth assignment of error complains of the action of the court in rendering judgment for rescission, when the evidence showed that the parties had agreed that the payment by Ingram, on the Watkins mortgage, of $1000, or the reconveyance of the four and a half acres of land, should be the measure of damages in case Kenan failed to pay the mortgage debt to the Watkins company.

The evidence was conflicting as to what the agreement of the parties was on this subject. Abbott testifies that in case Kenan made default in the payment of the mortgaged debt, Ingram was to pay $1000 of that debt, while Ingram says he had the option to pay the $1000 or reconvey the four and a half acres of land to Abbott. The court below made no finding on this issue, and was not requested to do so by the appellant, and we are therefore inclined to think that the question was waived; but we have considered it, and are of opinion that this assignment should also be overruled, because this stipulation or agreement applied only to a part of the consideration, and stood independent of the statements and representations relied on by appellee and which induced him to make the trade and conveyances.

The other assignments of error are all overruled, and we consider it necessary to notice only those raising in different forms the question of laches or election on the part of Abbott after the discovery of the fraud.

It is contended that Abbott knew in February or March of 1893 that Kenan was insolvent, and could not pay the notes, and that after he was informed of this fact he elected to waive the fraud and stand by the contract, in that he tried to sell the notes, and took a conveyance of the lands from Kenan and tried to sell them, and that these acts under

the circumstances amounted to a waiver of his right to rescind, and worked an estoppel upon his right so to do; and this question has given us more trouble than all the rest.

We are of the opinion, however, that as the value of the notes, as a safe and good investment, in the estimation of appellee, was based upon two facts, as represented by appellant, to-wit, the solvency of Kenan, and the value of the land, it was not incumbent upon him to ask for a rescission until he was apprised of the falsity of the statements as to both of said facts. Here the question is, whether the acts of appellee after learning of Kenan's insolvency should be held conclusively to establish an intended election on his part to abide by the contract.

The fraud being proven by appellee, he was entitled to a rescission unless the appellant then proved that he (appellee) had acquiesced in the fraud or elected to waive it and stand by the contract. It was incumbent on appellant to establish clearly that such was appellee's intention, after knowing all the material facts, before a court of equity should deny him relief. Here the court finds that appellee did not learn of the true value of the land until a short time before the suit was brought, and that soon after learning that it was worth only $1.25 per acre, instead of $2.50 as represented, he demanded a rescission of the contract, which appellant refused.

We think this finding is consistent with the evidence on the subject, and that it is clear that appellee considered the notes good until he learned that Ingram's representation that the land was worth $2.50 per acre was false, and that his efforts to sell the notes after learning of Kenan's insolvency, but before he learned that the land was not worth what Ingram had represented it to be, should not be held to establish a waiver of a fraud that he then knew not of, or an election on his part to stand by the contract regardless of the falsity of both statements upon which he relied. 2 Pomeroy's Equity, Jurisprudence, sec. 917; Tarkington v. Purvis, 128 Ind., 182; s. c., 9 L. R. A., 607; Montgomery v. Pickering, 116 Mass., 230.

It further appears from the evidence that Ingram, in order to protect these notes and save the land upon which they were liens, was compelled to pay the interest on the Watkins mortgage in 1892, and, consequently, actually knew at the time he sold them to Abbott that Kenan was insolvent and unable to pay even the interest on the Watkins debt. This fact the evidence shows Abbott did not learn until a short time before the request for rescission was made, and hence the real and intended fraud on the part of Ingram was not discovered until shortly before the suit was filed.

It was not necessary to tender the notes to Ingram when the demand for rescission was made, unless he had required them, as the findings show he declined to rescind the contract absolutely. Culberson v. Blanchard, 79 Texas, 493.

We therefore conclude that the judgment in this cause ought to be affirmed, and order accordingly.

ON MOTION FOR ADDITIONAL CONCLUSIONS.

The motion of appellants for additional conclusions we sustain, and add to the conclusions of fact found by the District Court and adopted by us, the following: .

We interpret the conclusions of the District Court as finding that Abbott had no actual knowledge of Kenan's insolvency in July or August, 1893, and received none until a short time before the suit was brought, and not until after he learned that the land was not worth $1.25 per acre; and this conclusion we approve as warranted by the evidence. But we further conclude as a fact that the circumstances were such as to put a person of reasonable prudence on inquiry, which if pursued with proper diligence would have led to knowledge of the insolvency.

Delivered January 9, 1897.                                     *Affirmed.*