DOOLEN et al. v. HULSEY et al. (No. 1090.)

(Court of Civil Appeals of Texas. Amarillo. Jan. 17, 1917. On Motion for Rehearing, Feb. 21, 1917.)

1. FRAUD ⬤⟳11(1) — MISREPRESENTATIONS — EXPRESSION OF OPINION—NOTE.

Representations that notes indorsed to purchasers without recourse were "good," or "good as gold," are not necessarily statements of opinion, but if made and intended to be accepted as statements of fact, they are actionable if fraudulent.

[Ed. Note.—For other cases, see Fraud, Cent. Dig. § 12.]

2. BILLS AND NOTES ⬤⟳293 — INDORSEMENT WITHOUT RECOURSE—REMEDIES OF INDORSEE —FRAUD.

A holder of notes indorsed without recourse cannot recover against his indorser on the notes, though he was induced by fraud to purchase them, but his remedy is by rescission of the contract and recovery of the price or by action for damages.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 662–664.]

3. FRAUD ⬤⟳49 — BILLS AND NOTES — REMEDIES OF INDORSEE—ISSUES.

The holder of notes indorsed without recourse cannot recover damages for fraud without pleading and proving the value of the property given in exchange for the notes.

[Ed. Note.—For other cases, see Fraud, Cent. Dig. §§ 44, 45.]

4. MORTGAGES ⬤⟳516—FORECLOSURE SALE— PURCHASE BY VENDOR.

Where purchasers of land assumed the mortgage thereon and later sold the land to others, who also assumed the original mortgage and gave second vendors' lien notes, the first purchasers, as between the purchasers from them and parties dealing with the land subsequently, are only secondarily liable for the first mortgage, and after they had indorsed the vendors' lien notes without recourse, they could, as against the holders of those notes, purchase the property at the sale on foreclosure of the first mortgage.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. § 1518.]

5. MORTGAGES ⬤⟳535(1) — FORECLOSURE — RIGHTS OF PURCHASER.

Where the owners of land subject to mortgage sold it and indorsed without recourse the vendors' lien notes received by them as a second lien, the rights they acquired by purchase of the land at the sale on foreclosure of the first mortgage did not pass to the holders of those notes under the doctrine that the acquisition of a subsequent title will inure to the ben-

efit of the prior grantee, since that doctrine is founded on estoppel.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. § 1556.]

On Motion for Rehearing.

6. APPEAL AND ERROR ⬗1173(1) — DISPOSITION OF THE CASE—PARTIAL REVERSAL.

Where judgment was rendered in favor of one defendant and against others and no complaint was made on appeal as to the judgment in favor of that defendant, that part of the judgment will not be reversed on reversal of the judgment against the other defendants, if the presence of the successful defendant is not necessary in the subsequent proceedings.

|Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4562–4567, 4569, 4656.]

Appeal from District Court, Childress County; J. A. Nabers, Judge.

Suit by G. W. Hulsey against J. H. Doolen and others. Judgment for the plaintiff against three of the defendants, and those defendants appeal. Reversed and remanded, but on rehearing affirmed as to the defendant against whom judgment was not rendered.

See, also, 188 S. W. 1009.

Jos. H. Aynesworth and W. B. Howard, both of Childress, for appellants. M. J. Hathaway, J. W. Davidson, and Fires & Diggs, all of Childress, for appellees.

BOYCE, J. The appellants Milam and Doolen, together with appellee Mowrey were the owners of the south one-half of section 502, block H. W. & N. W. Railway Company, in Childress county, Tex., subject to a deed of trust to secure the payment of a note for $2,750, in favor of the Reynolds Mortgage Company, which note and deed of trust had been executed by their vendor and payment assumed by the said Milam, Doolen, and Mowrey, in the deed of conveyance to them. Milam, Doolen, and Mowrey conveyed the land to W. A. Cantrell, in consideration of his assumption of the note to the Reynolds Mortgage Company, the execution by the said Cantrell of four notes, each for the principal sum of $458.65, payable to the said Milam, Doolen, and Mowrey, and also the transfer, and delivery by the said W. A. Cantrell of four vendor's lien notes, executed by C. E. Whatley, payable to W. A. Cantrell, each for the principal sum of $625, which said notes so executed by the said Whatley were a second lien on certain land in Kaufman county, Tex. A vendor's lien was retained in the deed to the said W. A. Cantrell, to secure the payment of all of said notes. The said W. A. Cantrell conveyed said land to W. D. Cantrell, who assumed payment of the note to the Reynolds Mortgage Company and also the payment of the four notes executed by W. A. Cantrell, above described.

The said Milam, Doolen, and Mowrey, on May 12, 1914, transferred to the appellee, G. W. Hulsey, the four notes executed by W. A. Cantrell, above described, and two of the notes executed by Whatley. A written transfer of the notes was duly executed and delivered to the said Hulsey, whereby the said parties conveyed to the said G. W. Hulsey said notes, together with all rights, titles and interest held by them in the land on which said respective notes were a lien. The said assignments of said notes contained this statement: "And we do hereby bind ourselves that said notes are the second lien on said land," etc.

The Whatley notes and two of the Cantrell notes, so delivered to Hulsey, were indorsed by Milam, Doolen, and Mowrey, without recourse; the other two Cantrell notes so delivered were indorsed without recourse by Mowrey alone, and were not indorsed in any manner by Milam and Doolen. There was testimony, however, that it was the intention that all of the notes should be indorsed by said parties without recourse, and that the delivery of two of the notes without such indorsements by Milam and Doolen was by mistake, and as the jury found that such was the intention of the parties, the transaction will be treated as if all the notes had been indorsed with recourse. One of the series of notes executed by Whatley and secured by a lien on the Kaufman county land was paid, and the other note was indorsed without recourse by Milam, Doolen, and Mowrey, and sold in June, 1914, to appellee C. W. Cecil, who took the same in part payment for a stock of goods sold to Milam and Doolen. Hulsey, as a consideration for the transfer and assignment of said notes, delivered to him as above recited, conveyed to Milam and Doolen 160 acres of land in Childress county, Tex., and, as just stated, Cecil took the note that was delivered to him in part payment for a stock of goods sold by him to Milam and Doolen. Milam and Doolen settled with Mowrey for his interest in said notes independently of the consideration therefor received from Hulsey and from Cecil; and, as no judgment was rendered against Mowrey and no complaint made of the action of the court with reference thereto, it will not be necessary to further mention him in this opinion.

On January 3, 1914, suit was filed in Coleman county, Tex., against Whatley, to foreclose the first lien on the land in Kaufman county. W. A. Cantrell and C. E. Whatley were parties to this suit. Judgment was rendered in said court on April 7, 1914, foreclosing the said lien, and said land in Kaufman county was sold and bought in by the plaintiffs in the Coleman county suit at such sale on the first Tuesday in July, 1914. It was not shown when citations were served, nor whether lis pendens notice of the pendency of said suit had been filed; neither does it appear when Milam, Doolen, and Mowrey first had any knowledge of said suit.

The Reynolds Mortgage Company's note

matured shortly after the transfer of the notes to Hulsey. Said Mortgage Company, on September 2, 1914, transferred and assigned said notes to C. W. Kiersey. The land was advertised and sold at trustee's sale and bought in by Kiersey on October 6, 1914. Kiersey conveyed the same by special warranty deed to H. H. Pennell, who conveyed the same to Milam, Doolen, and Mowrey. As the jury found that these conveyances constituted one transaction, the rights of the parties may be determined in the same manner as if the land had been bought in by Milam and Doolen at the trustee's sale. Milam and Doolen, on the 7th day of November, 1914, executed their note for $2,500 to the Childress Loan & Investment Company, securing payment of same by a deed of trust on said land.

G. W. Hulsey brought this suit on the four notes executed by Cantrell and two notes executed by Whatley, above described, making the Cantrells, Whatley, Milam, Doolen, Kiersey, Mowrey, C. W. Cecil, the Childress Loan & Investment Company and H. H. Pennell, who was trustee in the Childress Mortgage Loan & Investment Company mortgage, defendants, alleging the foregoing facts, which facts we find were established upon the trial; and, in addition thereto, that Milam and Doolen, as an inducement to said Hulsey to make the conveyance of the land to them, represented that the said notes "were as good as gold," and in effect that said representations were falsely and fraudulently made for the purpose of inducing, and that they did induce, the said Hulsey to accept said notes and convey his said land in Childress county, in payment therefor. He further alleged that no information was given him to the effect that a suit was then pending to foreclose the lien on the Kaufman county land, nor that the first lien on the Childress county land would soon mature; that Milam, Doolen, and Mowrey, by reason of their assumption of the payment of the Reynolds Mortgage Company note, were legally bound to pay the same and protect said land against the Reynolds Mortgage Company lien, preserving the security for the benefit of the notes transferred to the plaintiff; that the mortgage debt of the Reynolds Mortgage Company was acquired by Kiersey for the benefit of the said Milam and Doolen, the money being furnished by the said Milam and Doolen, either in person or by some one else at their request, and title at said sale was also acquired for their benefit; that by reason of such sale the lien of the Reynolds Mortgage Company deed of trust was extinguished, and that Milam and Doolen then held said land subject to the lien to secure the payment of the notes transferred by them to plaintiff; that by reason of such premises, the defendants Milam, Doolen, and Mowrey became liable to pay the full amount of said notes, principal,

interest, and attorney's fees, and plaintiff was entitled to a foreclosure of his lien as a first lien on said Childress county land.

The defendant C. W. Cecil answered, and by cross-bill alleged that the defendants Milam, Doolen, and Mowrey delivered the said C. E. Whatley note to him, representing that the maker of said note, C. E. Whatley, and indorser thereof, W. A. Cantrell, were good and solvent; that the said note was a lien on black land worth $100 an acre, and that the note was good, etc., making practically the same allegations with reference to the note transferred to him, and with reference to the fraud perpetrated upon him and as to his resulting rights, as was made by the said Hulsey in his petition, except that it was alleged that the said C. W. Cecil was induced to pay for said note by transfer of stock of goods.

Upon the trial evidence was introduced establishing the facts already stated, and in addition evidence, in support of the allegations of fraud made by the plaintiff Hulsey, and by the defendant Cecil; there being testimony that in the sale to Hulsey the said Milam and Doolen had represented said notes to be as good as gold, and that in the sale to Cecil they had represented that said note transferred to him was good. Milam and Doolen offered evidence controverting the evidence offered by Hulsey and Cecil as to these representations. No evidence was introduced as to the value of the Childress county land, nor as to the value of the Kaufman county land, and it was admitted by Hulsey and by Kiersey that the notes were represented to them as being second lien notes. It was also shown that H. H. Pennell, learning of the maturity of the Reynolds Mortgage Company note, had conferred with Milam and Doolen with reference to their liability for a deficiency judgment on the Reynolds Mortgage Company note, and arranged with the said Milam and Doolen to take up the Reynolds Mortgage Company note and carry a loan of as much as $2,500 against the land. The purchase of the Reynolds Mortgage Company note, the sale of the land, conveyance to Milam and Doolen, and execution of their note to the Childress Loan & Investment Company, was made in pursuance to this arrangement. The jury found, on the conflicting evidence, that Milam and Doolen had represented to Hulsey that the notes were as good as gold; that he relied on these representations, and that they were false, and he was thereby induced to trade his farm for said notes. The jury also found that Milam and Doolen represented to Cecil that the note transferred to him was good and Cecil thereby induced to take said note. They also found that these representations made to Hulsey and Cecil were false.

Upon these findings and the facts above stated, the court entered judgment for the heirs of Hulsey, he having died pending the

suit, against C. E. Whatley, W. A. Cantrell, J. H. Doolen, and W. T. Milam, for the principal, interest, and attorney's fees due on the notes executed by C. E. Whatley; and against the defendants W. A. Cantrell, W. D. Cantrell, J. H. Doolen, and W. T. Milam, for the amount, principal, interest and attorney's fees due on the notes executed by W. A. Cantrell. The court also entered judgment in favor of C. W. Cecil against Whatley, Doolen, and Milam for the amount of principal, interest, and attorney's fees due on the note executed by Whatley and transferred to Cecil. The judgment also foreclosed the vendor's lien retained in the deed from Milam, Doolen, and Mowrey to W. A. Cantrell against the Childress county land, directed the sale of same in payment of said judgment, and adjudged that said lien constituted a first lien on said land, and that the lien created by the Childress Loan & Investment Company deed of trust was subject to and should be postponed until the full payment of the said judgment in favor of Hulsey's heirs and C. E. Cecil. The said Milam and Doolen and the Childress Loan & Investment Company have appealed from said judgment to this court.

[1] Appellants Milam and Doolen contend that the statement above referred to that the notes were "good," or "as good as gold," could not be made the basis of an action for fraud. This contention is made on the assumption that the statement is necessarily an expression of opinion rather than a statement of fact. Even as expression of opinion, circumstances might exist which would render such a statement actionable, but the authorities are abundant to the effect that such statements are not to be necessarily regarded as a statement of opinion, but that, if made and intended to be accepted as a statement of fact, they will be actionable if falsely and fraudulently made to the same extent as any other material misrepresentation inducing the execution of a contract. Benton v. Kuykendall, 160 S. W. 438; Ingram v. Abbott, 14 Tex. Civ. App. 583, 38 S. W. 626; Ruling Case Law, vol. 12, p. 293; Cyc. vol. 20, pp. 71, 72; Crane v. Elder, 48 Kan. 259, 29 Pac. 151, 15 L. R. A. 797; Andrews v. Jackson, 168 Mass. 266, 47 N. E. 412, 37 L. R. A. 402, 60 Am. St. Rep. 390; Bish v. Beatty, 111 Ind. 403, 12 N. E. 523.

[2] However, where the notes are indorsed without recourse, as in this case, we are of the opinion that the cause of action is not on the note or the contract of indorsement, for by the very terms of the contract, such recovery is precluded (Daniel on Neg. Inst. § 670; Tiedeman on Commercial Paper, 260), but the remedy is either for rescission or in an action for damages on account of the fraudulent misrepresentation inducing the contract, as in any other case of contract procured by misrepresentations. Lissner v. Stewart, 147 S. W. 610; also authorities first above cited.

Appellee, in support of the judgment, cites the following authorities: Ingram v. Abbott, 14 Tex. Civ. App. 583, 38 S. W. 626; McFarling v. Carey, 149 S. W. 766; Daniels on Neg. Insts. § 730, 5th clause, and section 739a. We do not regard section 739a, Daniels on Negotiable Instruments, nor the authorities there cited, as being applicable here because the text and cases cited refer to an express contract of oral warranty, made at the time of the delivery of the paper. There is no contention that there was any express agreement of warranty in this case. The fifth paragraph of section 730, cited from Daniels on Neg. Insts., states, with reference to the liability of the assignor of the legal title to negotiable instruments—and ordinarily the liability of a vendor of commercial paper without indorsement and an indorser without recourse is the same—that he warrants by implication—

"that he had no knowledge of any facts which proved the paper, if originally valid, to be worthless, either by the insolvency of the principal or by having been paid, or otherwise by having become void and defunct."

We do not think that the author intended to state that one guilty of misrepresentations as to the solvency of the parties or as to the value of the paper could be held to the payment of the note on the contract of indorsement or as a warrantor. A reference to the cases cited in the text discloses that they were either suits for rescission or for damages for deceit. The matter is somewhat more fully considered by the author in subsequent paragraphs of his work. Sections 737–739, and the reading of the text and the authorities there cited shows that the author had reference to a liability on account of fraud, and that is, either for a rescission of the contract and repayment of the consideration, or for damages. As an illustration of the holding of the authorities cited by the author, we refer to the fact that he cites 2 Parsons on Notes and Bills, p. 41, and we find by reference to such authority that the law is stated thus:

"In all cases where the assignor of a bill or note knows it to be of no value and the assignee receives it in good faith, paying a valuable consideration of any kind, the assignor may be compelled to repay or return the consideration thus received."

If the language used in the opinion of this court, in the case of McFarling v. Carey, 149 S. W. 768, in the concluding paragraph of the opinion on motion for rehearing, is to be construed as announcing that the assignor would be liable on the note or contract of indorsement, we have concluded that such statement is too broad. The authorities in support of the statement there made by the court are all cases where the suits were brought either for rescission of contract or for damages on account of fraud. In any event, the Supreme Court has granted a writ of error in that case, and it cannot be regarded as controlling authority. It was ex-

pressly held in the case of Lissner v. Stewart, 147 S. W. 610, that the cause of action was not on the contract, and a reference to all of the Texas cases where this question has been before the court, except possibly the case of McFarling v. Carey, supra, shows that such suits were brought either for rescission or for damages for fraud.

[3] The pleadings of Hulsey, and of Cecil, and the evidence introduced on the trial, might perhaps be sufficient to justify a judgment for damages on account of fraudulent misrepresentation, with the exception that there is no allegation as to the value of the land conveyed to Hulsey, or as to the value of the stock of goods sold by Cecil in exchange for the respective notes transferred to them; neither is there proof of such facts. If the suit is to be regarded as one for damages on account of the fraudulent misrepresentation, this is absolutely necessary, as the recovery would be the difference in the value of the property given in exchange for the note and the value of the note received. George v. Hesse, 100 Tex. 44, 93 S. W. 107, 8 L. R. A. (N. S.) 804, 123 Am. St. Rep. 772, 15 Ann. Cas. 456.

We are of the opinion, therefore, that it was error for the court to enter judgment against appellants Milam and Doolen for the principal, interest, and attorney's fees due on the notes. This error is suggested by the very general terms of the second assignment and propositions made thereunder of the appellants Milam and Doolen, and would, in any event, be fundamental, and requires a reversal of the case.

[4] We do not agree with appellees' position that Milam and Doolen, on account of their assumption of the payment of the Reynolds Mortgage Company note, were in law bound to protect the land against said mortgage in favor of the holder of the vendor's lien notes taken when they sold the land to Cantrell. When they sold the land to Cantrell, taking his notes and Whatley's notes in part payment therefor, and when Cantrell assumed the payment of the Reynolds Mortgage Company note, in so far as Milam and Doolen were concerned, he became the principal obligor, the land itself was the primary fund for the payment of the Reynolds Mortgage Company's indebtedness, and Milam and Doolen, as between their vendee and parties dealing with the land subsequently, were secondarily liable only. Harris v. Masterson, 91 Tex. 171, 41 S. W. 482; Newby v. Harbison, 185 S. W. 642; Long v. Patton, 43 Tex. Civ. App. 11, 93 S. W. 519. Milam and Doolen transferred the vendor's lien notes which they had taken against the Childress county land, to Hulsey and Cecil, but they were transferred as second lien notes, so that, as we view it, the land re-

mained the primary fund for the payment of the indebtedness, and the Reynolds Mortgage Company note would constitute a first lien thereon, and Milam and Doolen, having transferred the second lien notes, without recourse, and as second lien notes, would not be liable to protect the second lien against foreclosure of the first lien. So that were it not for any change that the alleged fraud might make with reference to the position of the parties, we do not understand why Milam and Doolen, upon foreclosure of the first lien, might not become the purchasers of the land.

[5] Neither do we understand how the doctrine that the acquisition of a subsequent title will inure to the benefit of a prior grantee applies in this case, for such doctrine has its foundation in estoppel. Baldwin v. Root, 90 Tex. 553, 40 S. W. 3. It is true that Milam and Doolen transferred whatever title they may have had to Hulsey; but by the very transfer the existence of the first lien against the land was mentioned, and they warranted that the lien transferred was a second lien; and when the land was sold at trustee's sale, under the first mortgage, whatever right was thus transferred to Hulsey would be foreclosed. Hampshire v. Greeves, 104 Tex. 620, 143 S. W. 147. So that, unless some doctrine of equity would interpose to preserve the lien in favor of Hulsey, by reason of the fraud that had been perpetrated upon him, in the sale of the notes to him—and we have been referred to no such doctrine, and are not called upon to decide whether any such exists—Milam and Doolen would, in our opinion, acquire good title to the land at the purchase at trustee's sale under the first deed of trust. In any event, if by any means a lien could be given to Hulsey and Cecil under the circumstances, the subsequent mortgagees of Milam and Doolen could not have their lien postponed if they had no knowledge of the facts which would create such lien in the first instance.

The judgment will be reversed, and the cause remanded.

### On Motion for Rehearing.

[6] As no complaint is made by any of the parties to this appeal as to the judgment of the court below in favor of the defendant Mowrey, and a proper disposition of the case on another trial is not dependent upon the further presence in the case of the said defendant, we have concluded to affirm the judgment as to such defendant and reverse it as to all others only. Hamilton v. Prescott, 73 Tex. 565, 11 S. W. 548; M., K. & T. Ry. Co. v. Enos, 92 Tex. 577, 50 S. W. 928; Wimple v. Patterson, 117 S. W. 1037.