ZUNDELOWITZ v. WAGGONER et al.
(No. 1511.)

(Court of Civil Appeals of Texas. Amarillo.
April 2, 1919. Rehearing Denied
May 7, 1919.)

1. FRAUD ☞13(2) — MISREPRESENTATIONS —
KNOWLEDGE OF FALSITY.

Ordinarily misrepresentation of a material fact is sufficient to support an action for fraud, whether the person making it knew that it was false or not, one making a statement of fact as basis of negotiations being bound to know whether it is true, and bad faith not being a necessary element.

2. FRAUD ☞11(1) — MISREPRESENTATIONS —
OPINION.

. In an action for inducing a part owner of an oil and gas lease to sell to another part owner by falsely representing that a well dug in the neighborhood would be a dry hole, although the purchaser knew that the well was then producing, such statement, although in the form of an opinion, being made for the purpose of deceit as to a matter within the knowledge of the person expressing it, was sufficient to form a predicate for actionable fraud.

3. CONTRACTS ☞97(1)—AVOIDANCE—FRAUD—
WAIVER OR CONDONATION.

Fraud which renders a contract voidable may be waived or condoned, and the contract ratified by the party defrauded.

4. CONTRACTS ☞97(2)—RATIFICATION.

Acts relied upon as ratification must be done after the person defrauded has obtained full knowledge of all material facts, and of his own rights to impeach the transaction, or where he ought by reasonable diligence to have been in possession of such knowledge.

5. MINES AND MINERALS ☞58—OIL AND GAS
LEASES—SALES—FRAUD—WAIVER OF RIGHT
·OF ACTION.

In an action to set aside the transfer of a part interest in an oil and gas lease, made on representations that a well in the process of being sunk in the neighborhood would be a dry hole when, as a matter of fact, the purchaser knew it was producing, bad faith on the part of the purchaser being material, knowledge on the seller's part as to such bad faith was also material in determining whether he had waived the fraud by executing the transfer.

6. CANCELLATION OF INSTRUMENTS ☞51—
SALE OF OIL AND GAS LEASE—FRAUD—IN-
STRUCTIONS—KNOWLEDGE.

·In an action to set aside transfer of plaintiff's interest in an oil and gas lease because of fraudulent misrepresentations, an instruction that the seller must know "all of the facts with reference to the transaction" was not erroneous by omitting the word "material"; such qualification being implied.

7. CANCELLATION OF INSTRUMENTS ☞43—
PLEADING—VARIANCE—TITLE.

In an action to set aside the transfer of plaintiff's interest in an oil and gas lease be-

cause of fraudulent misrepresentations,, where the transfer was correctly described in the petition, a fatal variance was not created by evidence showing that the title to the lease was subject to a parol trust.

Appeal from District Court, Wichita County; Edgar Scurry, Judge.

Action by A. Zundelowitz ·against Ed. Waggoner and another. Judgment for defendants, and plaintiff appeals. Reversed and remanded.

Carrigan, Montgomery & Britain, of Wichita Falls, for appellant.

Martin, Bullington, Boone & Humphrey, of Wichita Falls, for appellees.

BOYCE, J. Appellant brought this suit to set aside· for fraud a transfer from appellant to appellee Waggoner of an undivided one-fourth interest in an oil and gas lease on 348½ acres of land in Wichita county. The defendants denied the making of the fraudulent representations alleged by plaintiff as the basis of his cause of action, and also pleaded that while the contract was still executory defendant learned the facts as to which he claimed to have been deceived, and by proceeding with the consummation of the contract condoned the fraud and ratified the contract secured thereby. The charge of the court submitted the issues of fraud and ratification, and the jury returned a general verdict for the defendants. The assignments of error complain only of the action of the court in the manner of the submission of the issue of ratification, but a consideration of these assignments requires a general statement of the case on the issue of fraud as well as that of ratification.

Zundelowitz owned an undivided one-fourth interest in the oil and gas lease on the land in question. The remaining interest in the lease was owned by appellees, Waggoner and Silk, together with one Fine and others, each· party's interest being a separate undivided interest. The Gulf Production Company, prior to the transaction in question, was drilling a well near this lease, and the discovery of oil in said well would immediately and greatly enhance the value of this lease. On May 13, 1917, appellees, Waggoner and Silk, learned that oil had been struck in the Gulf Production Company's well, and immediately set out, by agreement among themselves and before the other parties should learn of such fact, to purchase the interests of the said Zundelowitz and Fine, it being arranged between them that Waggoner should buy the Zundelowitz interest and Silk the Fine interest, and that they should thereafter hold these interests jointly and equally. Waggoner immediately arranged a meeting with Zundelo-

witz, and secured an option for three days on his interest in the oil lease on the valuation of the lease at $37.50 per acre, paying $100 for the option. This option was exercised and a transfer of the lease made by Zundelowitz on the next morning between 8 and 9 o'clock. Silk secured Fine's interest, and thereafter, on May 14th, said Waggoner and Silk made and recorded an agreement declaring their joint ownership of said two interests. On the same day also a contract was made for the sale of a lease on 248 acres of land to the Magnolia Petroleum Company, for the sum of $300 per acre, which was alleged to be the reasonable value of said lease per acre after the discovery of oil in the Gulf Production Company well. By agreement this contract of sale with the Magnolia Petroleum Company was allowed to be consummated, the proceeds thereof being substituted for the lease as to said portion of the land. The evidence offered by plaintiff tends to show that he was ignorant of the fact of the discovery of oil in the Gulf Production Company well, and was fraudulently induced to execute the option contract in this way: He placed confidence in Silk's ability to secure information relative to the progress in the drilling of said well, and was informed by Silk that he was watching it, and advised not to sell except on information from the said Silk as to such matters. Waggoner, at the time he secured the option contract, represented that some Oklahoma parties were coming to Wichita Falls, to whom he thought he could sell the lease at $37.50 per acre, but such parties would only purchase the entire interest, and he was securing this so that he would be ready for them; that all the parties interested in the lease, including Silk, were going in on such sale. In response to a question from Zundelowitz as to whether he had heard anything from the well Waggoner replied, "It is likely to be a dry hole." As to the issue of condonation or ratification the evidence, though contradicted by appellant, tends to show that Zundelowitz, before he executed the transfer of the lease on Monday morning, had learned of the fact that the Gulf Production Company well had come in as a good producing oil well. There is no evidence as to when he learned that Waggoner had any information as to such matter at the time of the execution of the option contract or as to when he learned that the representations as to the purchase by the Oklahoma parties and Silk's agreeing to go in on it were false.

The charge of the court submitted the issues of fraud as made by the plaintiff's evidence above referred to, following the submission of these issues by a charge which told the jury in effect that, although they should find that such representations had been made, yet if they should further find that Zundelowitz discovered the falsity of such representations before he executed the transfer, their verdict should be for the defendants. The appellant requested the court to give in connection with this paragraph of the charge an instruction as follows:

"Before you can find for the defendant under said paragraph you must believe that A. Zundelowitz, before he executed and delivered the transfer of the lease, knew all the facts with reference to the transaction, that is, he must have known that the representations were false, and he must have known that Ed. Waggoner, at the time said representations were made, knew the facts with reference to the said well, or had information with reference to the same, and failed to communicate the facts within his knowledge; and it would not be sufficient simply for you to find that A. Zundelowitz had information before he made said transfer that the well had been brought in."

Appellant's assignments are as to the giving of the charge referred to and refusal of the court to give in connection therewith the charge just quoted.

Reduced to the ultimate, the complaint of the appellant is that the appellees fraudulently represented and induced him to believe that the discovery of oil in the Gulf Production Company well was uncertain—that it might be a dry hole. All of the other representations and conduct were simply a means to this end. Appellee, in order to sustain the submission of the issue of ratification at all, concedes this to be true, quoting in support of this proposition the following from plaintiff's testimony:

"I wanted to set this trade aside because he (Waggoner) said it was to be a dry hole, and on the basis of that he was going to sell it. It made a big difference to me whether it was going to be a dry hole. If I had known the well was a producing well I would not have sold it for $37.50."

So we assume that it is true, as contended by appellee, that if Zundelowitz, at the time he executed the transfer, knew that he had been fraudulently induced to sign the option contract by representations that the Gulf Production Company well might be a dry hole, then such act of executing the transfer would be a sufficient ratification of the original option contract secured by fraud.

[1, 2] Ordinarily, misrepresentation of a material fact will be sufficient to support an action for fraud whether the person making it knew that it was false or not. One making a statement of fact as a basis of negotiations is bound to know whether it is true, and bad faith is not in such cases a necessary element of an action for fraud. In this case, however, the statement in reference to the well was made in the form of the expression of an opinion, and it is generally true that a statement of an opinion will not form the basis of an action for

fraud. There are exceptions to this rule, however. Where an opinion is expressed for the purpose of deceiving as to a matter which has within the knowledge of the person expressing it ceased to be a matter of opinion, and is thereby made the means of a misrepresentation or concealment of a fact, it may form the predicate for actionable fraud. Houston v. Darnell Lumber Co., 146 S. W. 1063; Olston v. Oregon Water Power & R. Co., 52 Or. 343, 96 Pac. 1095, 97 Pac. 538, 20 L. R. A. (N. S.) 926; 20 Cyc. 18; 12 R. C. L. p. 248; Mudsill Mining Co. v. Watrous, 81 Fed. 163, 9 C. C. A. 415. An exhaustive note on this subject will be found in 35 L. R. A. pp. 425–427. An examination of these authorities will show that, where expressions of opinion form the basis of the action for fraud, the bad faith of the party expressing the opinion, which involves knowledge of the falsity of the inferences drawn therefrom, is an essential element in determining whether the action for fraud is maintainable. The same is true if the case is regarded as one of fraudulent concealment. Black on Rescission and Cancellation, §§ 59–61; R. C. L. vol. 12, pp. 341, 342. According to the evidence the statement in regard to the well was made in reply to a question from Zundelowitz, and the circumstances were such as that a misleading and evasive answer might amount to a fraudulent concealment, furnishing the basis of an action for deceit. So that, however the case is regarded, the fact of bad faith on the part of Waggoner would be important in determining the right of the plaintiff to a cancellation of the contract.

[3, 4] Fraud which renders a contract voidable may be waived or condoned, and the contract ratified by the party defrauded, but acts relied upon as ratification must be done after the person defrauded "has obtained full knowledge of all the material facts involved in the transaction, has become fully aware of its imperfection and of his own rights to impeach it, or ought and might, with reasonable diligence, have become so aware." 2 Pomeroy (3d Ed.) § 964; North American Accident Insurance Co. v. Miller, 193 S. W. 758; Ingram v. Abbott, 14 Tex. Civ. App. 583, 38 S. W. 626; Black on Rescission and Cancellation, § 591.

[5] If bad faith on the part of Waggoner in making the representation as to the well was material in determining whether fraud had been committed, it necessarily follows that knowledge on the part of Zundelowitz as to such bad faith was also a material fact in determining whether he had waived the fraud by executing the transfer. The charge of the court does not therefore correctly present the issue of ratification as made by the evidence. This was called to the court's attention, both by objections to the charge and by the request for instructions referred to. We think the charge requested should have been given.

[6] The appellee contends that this charge was erroneous because of the failure of the court to use the word "material" in connection with the requirement that Zundelowitz know "all of the facts with reference to the transaction." We do not think that this omission vitiates the charge, as this qualification would be implied, besides the explanation which follows this general statement in the charge leaves no room for mistake as to the meaning thereof.

[7] We do not think that there was any fatal variance between the allegations as to the terms of the contract sought to be set aside and proof thereof. It was the purpose of the suit to set aside a written transfer of the lease, and there is no claim that this was not correctly described in the petition. Plaintiff's evidence, however, tended to show that under an oral agreement between him and Waggoner the title thus required was subject to the terms of a parol trust, providing for a division of the proceeds of the sale thereof in the event Waggoner should sell the same for more than $37.50 per acre. The suit is not on the contract of sale evidenced by the transfer, but to set it aside, and if it was procured by fraud this relief would be equally available, even though the title thus acquired may have been subject to the parol trust referred to.

For the reasons stated, the cause will be reversed and remanded.