ELIAS BACH et al., Appellants, *v.* SIMON TUCH, as Assignee, etc., Respondent.

126   53
144   712

Where a vendor, who has been induced by fraudulent representations to sell his goods, elects to ratify the sale after knowledge of all the material facts, such election will be conclusive, although at the time he makes it he is ignorant that his vendee has made similar fraudulent representations to others by which he had obtained property from them.

It is not necessary, in order to make the election conclusive, that the party electing shall be acquainted with all of the evidence which may tend to prove the fraud; it is sufficient if he has knowledge of all the material facts showing the actual perpetration of fraud upon him.

*Hays* v. *Midas* (104 N. Y. 602), distinguished.

Plaintiff sold certain goods to M., defendant's assignor, on credit. Before the term of credit expired M. made an assignment for the benefit of creditors to defendant. Plaintiffs immediately brought an action against M. to recover the purchase-price of the goods, and caused an attachment to be issued therein, the complaint and affidavits alleging that the sale was induced by false and fraudulent representations on the part of M. The attachment was vacated and thereupon said action was discontinued. This action was thereafter commenced to recover possession of the goods sold, on the ground that M. purchased with a fraudulent intent not to pay for the goods. Plaintiffs proved false and fraudulent representations made by M. to other parties which they claimed were not known to them when the first action was commenced. *Held*, that plaintiffs, by their first action, made an election which ratified the sale to M., and so, they could not maintain this action; that ignorance of the representations made to others at the time of the bringing of the first action did not destroy its effect as an election; also that a charge in the second action of fraudulent intent at the time of the purchase not to pay did not constitute a separate fraud.

(Argued March 2, 1891; decided March 10, 1891.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made June 6, 1890, which affirmed a judgment in favor of defendant entered upon a verdict directed by the court.

The nature of the action and the facts, so far as material are stated in the opinion.

*B. F. Eeinstein* for appellants. The court erred in directing a verdict for the respondent. (*Devoe* v. *Brandt*, 53 N. Y. 462, 465; *Hennequin* v. *Naylor*, 24 id. 139; *Wright* v. *Brown*, 67 id. 1.) The appellants were not precluded by the action in the city court from maintaining this action. (*Terry* v. *Munger*, 121 N. Y. 161; *E. C. F. Co.* v. *Hersee*, 103 id. 25; *Conrow* v. *Little*, 115 id. 387; *Hays* v. *Midas*, 104 id. 602.)

*Louis Marshall* for respondent. There was not sufficient proof of fraud to vitiate the sale. (*Nichols* v. *Pinner*, 18 N. Y. 299; *White* v. *Brown*, 67 id. 9; *People's Bank* v. *Bogart*, 81 id. 108; *Morris* v. *Talcott*, 96 id. 100; *Van Kleek* v. *LeRoy*, 4 Abb. Pr. [N. S.] 431; *E. C. & B. Co.* v. *Avery*, 83 N. Y. 34; *Macullar* v. *McKinley*, 99 id. 353.) Plaintiffs, with full knowledge of the facts, decided to follow one of two

inconsistent remedies, and choice between them once made, the right to follow the other is gone forever. (*Hays* v. *Midas,* 104 N. Y. 602, 606; *Morris* v. *Rexford,* 18 id. 352; *Kenney* v. *Kiernan,* 46 id. 164; *Hughes* v. *V. C. M. Co.,* 72 id. 207; *Smith* v. *Knapp,* 30 id. 581, 591; *E. C. F. Co.* v. *Hersee,* 103 id. 28; *Cobb* v. *Hatfield,* 46 id. 536; *Moller* v. *Tuska,* 87 id. 166; *Powers* v. *Benedict,* 88 id. 609; *Riley* v. *A. S. Bank,* 36 Hun, 513; *Rodeman* v. *Clark,* 46 N. Y. 354; *Borrell* v. *Newell,* 3 Daly, 333; *Kennedy* v. *Thorp,* 51 N. Y. 174; *Bank of Beloit* v. *Beale,* 34 id. 473; *Fowler* v. *Bank,* 113 id. 450; *Acco* v. *Hotchkiss,* 97 id. 395; *Conrow* v. *Little,* 115 id. 387; *Terry* v. *Munger,* 121 id. 161.)

PECKHAM, J. I am inclined to think the plaintiffs gave sufficient evidence of the purchase of the goods with a fraudulent intent, by the assignor of the defendant, to entitle them to a submission of the question to the jury, were it not for the facts put in evidence regarding their election of an inconsistent remedy.

The facts are that on the 27th of October, 1885, the plaintiffs sold and delivered to defendant's assignor, goods and merchandise to the value of $1,166.10, and took his note in payment thereof, payable in four months from November 2, 1885. On the 21st of December, 1885, the defendant's assignor made an assignment to defendant for the benefit of the creditors of the assignor, and on the next day the plaintiffs commenced an action against the assignor to recover the purchase-price of the goods so sold in October, notwithstanding the credit then given had not expired. The plaintiffs claimed the right to ignore the credit upon the ground that the defendant's assignor had procured the sale of the goods to him by virtue of a fraud.

In an affidavit in the action, made to obtain an attachment, one of the plaintiffs stated that the assignor, at the time he purchased the goods from plaintiffs, had made certain representations (which he set forth in the affidavit) regarding the financial condition of the assignor, for the purpose of obtaining credit on such purchase, and that the plaintiffs relied on them.

and were induced by their means to sell and deliver the goods to him on the credit asked for. It was further stated in the affidavit that such representations were false in every particular, and that the assignor knew they were false when he made them; that he had since then made a general assignment and had given preferences to his wife and others, which were made to cover up his property and remove it beyond the reach of his *bona fide* creditors, and that the preferences were fraudulent, and that he had thereby removed and disposed of his property with the intent to cheat and defraud his creditors. The action in which the attachment was sought it is thus seen was one which ratified the sale of the goods, but ignored the credit and sought to recover the purchase-price of the property sold. The attachment was granted, but it was subsequently vacated by the General Term, and the suit to recover the purchase-price of the goods sold was thereupon discontinued.

After such discontinuance, the plaintiffs commenced this action, in which they repudiate the sale and claim the specific property which the assignor had obtained from them and which they now claim is their property and has been at all times, because the assignor, when he procured it from the plaintiffs, purchased it with the intent not to pay for it.

The first suit ratified the sale of the goods and sought to recover their purchase-price while this action repudiates the sale and claims the title and ownership of the goods themselves, and seeks their recovery in specie.

These are, of course, inconsistent attitudes, and constitute *prima facie* an attempted enforcement of inconsistent remedies.

The plaintiffs show in their affidavit in the first action to obtain an attachment, that they had knowledge of the facts constituting the fraud by which their property was obtained by the assignor. From that affidavit, it appeared that they knew that the representations made to them by the assignor were false and, as they charged, were also fraudulent, and that they were made for the purpose of obtaining the property of the plaintiffs on credit, and without paying for it, and they knew, when they commenced the action, of the fact of the insolv-

ency of the assignor at the time he made his representations. With this knowledge, they commence an action which ratified the sale by them to the assignor. This would seem to constitute a clear case of election. But the plaintiffs claim that they only ratified the sale of their property to the assignor, after a knowledge of the facts above stated, but that there is no evidence plaintiffs knew of the fraudulent representations made by the assignor to others at about the same time, and by reason of which, added to the fact of insolvency, they urge that the assignor was guilty of an entirely separate fraud upon plaintiffs by purchasing their property with a preconceived design not to pay for it, and this fraud being unknown to them, or at least there being no evidence that they did know of it at the time of the alleged election, they are not to be bound by it.

They seek really to make two distinct causes of action out of the transaction by which their property was fraudulently obtained from them by the assignor.

Acting on that theory, the plaintiffs gave no evidence on this trial of any representations made to them by the assignor, but, in connection with the other facts in the case, relied altogether upon evidence of similar false representations made to others at about the same time. This was a scheme, they say, by the assignor to purchase a large amount of goods from many different parties upon these false representations, and with full knowledge of his insolvency, and with this preconceived design not to pay for them, but soon thereafter to make an assignment with preferences, as already stated.

The difficulty with the plaintiffs' case lies in making any substantial separation of the fraud by which the property was obtained. It was in reality one transaction. The assignor procured the plaintiffs' property by fraud. The fraud consisted in false and fraudulent representations, relied on by the plaintiffs and known to be false by the assignor, but made for the purpose of thereby inducing the sale, which in fact was thereby induced.

The fact that the assignor made other fraudulent representations of a similar nature to other persons at about the same time,

does not alter the fact that these representations were made to plaintiffs, and that the plaintiffs were thereby induced to sell.

Evidence of the other representations might strengthen the plaintiffs' case upon the question of the fraudulent intent, but would not alter the nature of the fraud perpetrated upon them. With full knowledge of that fraud, they have elected to ratify the sale. Very likely. at the time of the election made by them, they were ignorant of all the evidence which would aid in the proof of the fraud, but knowledge of all such evidence is not necessary to make an election conclusive.

While a party may be convicted of fraud in purchasing property with a preconceived design not to pay for it, without proof of any false representations made to the seller, yet in this case the plaintiffs have themselves alleged in the affidavit already alluded to, that the goods were procured from them by means of false and fraudulent representations made to them, and hence any proof of the same kind of representations made to others must be material only upon the question of fraudulent intent.

It seems quite plain, therefore, that there was but one fraud practiced upon the plaintiffs when their property was obtained, and although the assignor may have had a preconceived design not to pay for it, yet he obtained it by reason of his false representations.

Where a party who has been induced by fraudulent representations to sell his goods to another, elects to ratify the sale after knowledge of all the material facts going to prove the fraud, such election will be conclusive, although at the time he makes it, he is ignorant that his vendee had made similar fraudulent representations to others by which he had obtained property from them. The fact of the making of similar fraudulent representations to others is in such case nothing more than in substance cumulative evidence upon the question of the intent with which the representations were made to the seller. It is not necessary in order to make the election conclusive that the party electing shall be acquainted with every particle of evidence which may tend to prove the fraud. So long as he has knowledge of all the material facts which go to make up the

case of fraud as practiced upon him, it is sufficient. It rarely occurs that the seller is cognizant at the time he acts, of every particle of evidence which tends to prove the fraud. It will frequently, if not generally, happen that some portion of the evidence tending to prove the main facts in the case, will come to light after the action taken by the seller, and if the knowledge of such fact were a necessity in order to conclude the party by his election, the doctrine itself would be of no account. Knowledge of the facts must mean in such cases knowledge of the material facts to show the actual perpetration of the fraud upon the seller, and not knowledge of all the evidence which may tend to prove the main fact.

The case of *Hays* v. *Midas* (104 N. Y. 602) is not in point.

There the action first brought was to recover the purchase-price of the goods sold and an attachment was issued upon affidavits which alleged that the defendant had removed and disposed of his property with intent to defraud creditors. The second action was to recover the personal property sold. It was stated here that the two actions were inconsistent and if it had appeared that the plaintiff instituted the first with knowledge that the defendant had obtained the goods fraudulently, the plaintiff would have been concluded by his election in the first action. But it was said there was no proof of any such knowledge and that the affidavits which showed a fraudulent disposition of the property, were not the slightest proof that the defendant had fraudulently procured it.

The trouble with the plaintiffs' case here is that the affidavits show the existence of the very knowledge by the plaintiffs, which if it had existed in the *Midas* case we said would have prevented a recovery therein.

We think the plaintiffs made an election which ratified the sale of the goods by them to the assignor, and consequently they cannot maintain an action which is based upon the assumption that they still own the property.

The judgment should be affirmed, with costs.

All concur.

Judgment affirmed.