**WAGGONER et al. v. ZUNDELOWITZ.**
(No. 226–3400.)

(Commission of Appeals of Texas, Section B. June 1, 1921.)

**1. Mines and minerals ⚏74—In suit to rescind transfer of interest in lease instruction for defendants held not error, if misrepresentations were all as to facts.**

In a suit to rescind an assignment of interest in an oil lease, based on defendants' false representations to obtain an option on plaintiff's interest in the lease transferred to them, an instruction to find for defendants if plaintiff discovered their falsity before he signed, and, knowing thereof, executed the transfer, was not erroneous, if none of the misrepresentations involved an opinion, but were all statements of actual facts.

**2. Mines and minerals ⚏74—A false statement, claimed to obtain a transfer of interest in lease, held a statement of fact.**

A false statement that an oil well being drilled was to be a dry hole, claimed to have been made to obtain an option on an interest in a nearby lease, was not an expression of an opinion, but a statement of fact based on apparent knowledge.

**3. Appeal and error ⚏215(1)—Instruction as to false representation held correct on appeal, in absence of objection thereto.**

Where, in an action based on alleged false representation, most of which appeared to be not merely matters of opinion, an instruction, proper as applying to misrepresentations as to facts, must be held correct on appeal, in absence of objection that it did not distinguish between kinds of misrepresentations and apply the law accordingly.

**4. Appeal and error ⚏1033(5)—Instruction that plaintiff, suing to rescind, must have discovered falsity of all representations before waiver established, held harmless.**

In an action to rescind and cancel the sale of an oil lease on the ground of misrepresentations by the buyer as to the nonproductivity of a well on adjacent property, an instruction that plaintiff must have discovered the falsity of all the representations, and not merely the material ones, before he could be held to have waived the fraud by signing the transfer, was not prejudicial to plaintiff.

**5. Mines and minerals ⚏74—Waiver of fraud affecting rescission of transfer of interest in lease not dependent on knowledge that transferee knew representations were false.**

Waiver of fraud by execution of transfer of interest in oil lease with knowledge thereof does not depend on knowledge that the transferee knew he was falsifying when he made representations amounting to statement of opinion to procure an option on such interest, whether such option was binding or not.

**6. Mines and minerals ⚏74—Falsity of an opinion representation to obtain option on interest in lease held not material as affecting right to rescind.**

Falsity of an opinion representation that a nearby well looked like a dry hole, made to obtain an option on an interest in an oil lease, was not material as affecting right to rescind the transfer of such interest, where nothing was done to prevent a fair test of the well, and the assignor did nothing to inform himself in relation thereto.

**7. Appeal and error ⚏1067—Failure to instruct that party suing to rescind must have had knowledge before he could waive fraud held not prejudicial.**

Where plaintiff, after discovering the falsity of defendant's representation that an oil well on land near his lease was a dry hole, signed a transfer of his lease to defendant, he was not prejudiced by the failure of the court to charge that he must have known that defendant knowingly falsified before he could be adjudged to have waived the fraud; the discovery of the falsity leading inevitably to the conclusion that defendant knew it was false when made.

**8. Mines and minerals ⚏74—Fraud in obtaining option on interest in lease waived by transfer after notice of misrepresentations as to nearby well.**

If waiver of fraud in obtaining an option on an interest in an oil lease depended on knowledge of the false representations about a nearby well, the fraud was waived by a transfer without further inquiry, after being advised by others that the well was a good producer; it having come in the same or the previous day, and being the talk of the town.

**9. Mines and minerals ⚏74—Charge as to waiver of fraud by signing transfer properly refused for failing to submit sufficiency of knowledge of fraud.**

In an action to rescind a transfer of an interest in an oil lease on the ground of fraud

---

in obtaining an option, a special charge that plaintiff did not waive the fraud by signing the transfer after discovering the falsity of representations, unless he knew of defendant's bad faith, was properly refused for failing to submit the question as to whether or not the knowledge he had was sufficient to put him on inquiry.

**10. Mines and minerals ⬅➡74—In suit to rescind transfer of interest in lease, charge as to waiver of fraud held erroneous as to necessity of knowledge of bad faith.**

In an action to rescind a transfer of an interest in an oil lease on the ground of fraud, a charge that, unless the plaintiff, before he executed the transfer, knew all the facts with reference thereto, the representations were false, and that the defendant at the time knew the facts and failed to communicate the same, was erroneous, as not confining the necessity of the plaintiff's knowledge of bad faith to the one opinion representation that a well being drilled on nearby land was to be a dry hole.

**11. Mines and minerals ⬅➡74—Fraud in obtaining option on interest in lease may be waived by executing final assignment if assignor only knows material facts.**

Fraud in obtaining an option on an interest in an oil lease may be waived by execution of the final assignment, if assignor only has knowledge of the material facts, and need not know all the facts with reference to the transaction.

**12. Trial ⬅➡194(11)—Charge on fraudulent representations held erroneous as on weight of the evidence.**

In an action to cancel an oil lease on the ground of fraudulent representations, a requested charge, stating as a matter of law that a certain fact was material and a certain other fact, taken alone, was not material, *held* erroneous as on the weight of the evidence.

**13. Trial ⬅➡261—Special charge properly refused, unless correct in all its parts.**

A special charge should be refused unless correct in all its parts; the trial court being under no obligation to separate the correct from the incorrect portions.

**14. Appeal and error ⬅➡1002—Verdict on conflicting evidence not disturbed.**

Where the evidence was conflicting, verdict rendered by the jury will not be disturbed on appeal.

Error to Court of Civil Appeals of Seventh Supreme Judicial District.

Suit by A. Zundelowitz against Ed Waggoner and another. From a judgment of the Court of Civil Appeals, reversing a judgment for defendants (211 S. W. 598), defendants bring error. Reversed, and judgment of district court affirmed.

Bullington, Boone, Humphrey & Hoffman, of Wichita Falls, for plaintiffs in error.

Carrigan, Britain & Montgomery, of Wichita Falls, for defendant in error.

POWELL, J. This suit was filed in the district court of Wichita county, Tex., by A. Zundelowitz against Ed Waggoner and W. W. Silk, praying for a rescission and cancellation of a certain transfer and assignment of an oil and gas lease, executed by defendant in error on May 14, 1917, and further praying, in the alternative, for his damages in the sum of $18,000. All of the parties had been jointly interested in an oil lease covering 348½ acres of land, the interest of Zundelowitz being an undivided one-fourth. On the date last mentioned, the latter conveyed his interest therein to Waggoner for a cash consideration of $37.50 per acre. Waggoner then conveyed to Silk an undivided one-half of this interest he had purchased from Zundelowitz.

The petition alleged that an oil well was being drilled on the Burnett ranch about one mile from said lease; that about May 12, 1917, Waggoner and Silk became informed that the well above mentioned was being brought in, and was showing up for a good well; that they then conspired together to defraud Zundelowitz out of his interest in the lease on said 348½ acres; that in pursuance of said conspiracy they made certain false representations to him with reference to said well and lease, and concealed certain other information with reference thereto, thereby obtaining an option from the latter on May 13, 1917, covering his one-fourth interest in said lease; that the assignment was executed, as aforesaid, the next day; that at that time he was still in ignorance of the true facts about the oil well development near the lease.

Waggoner and Silk answered by general and special exceptions and general denial; they specially denied that they defrauded Zundelowitz, or concealed any information from him which it was their duty to impart; they further pleaded that Zundelowitz had the same opportunity to know of the development on the Burnett ranch and the bringing in of the Gulf Production well thereon, as they did, and that he was fully advised even before the option was signed; that in any event, before the final assignment was executed to Waggoner on May 14, Zundelowitz did have knowledge of all the material facts about the development on the Burnett ranch, and, even if he had been defrauded in the beginning, his act in executing the final assignment and completing the executory contract and option amounted to a waiver and condonement of the alleged fraud, and a ratification and confirmation of the option contract which he alleged Waggoner had secured by misrepresentation and concealment. The answer further alleged that the actions and conduct of Zundelowitz in the premises estopped him from seeking to cancel his transfer of his undivided interest in said

lease, or to seek damages by reason thereof.

The case was tried before a jury, which, in response to a general charge of the court, returned a general verdict for Waggoner and Silk. Complying with the jury's verdict, the judgment of the court was that Zundelowitz take nothing by his suit, and that Waggoner and Silk go hence and recover their costs.

In due course, Zundelowitz appealed from the judgment of the trial court to the Court of Civil Appeals at Fort Worth, whence the case was transferred to the Court of Civil Appeals at Amarillo. The latter court entered judgment reversing the judgment of the trial court and remanding the case for another trial. See 211 S. W. 598. Waggoner and Silk, in due time, filed a motion for rehearing in the Court of Civil Appeals, which was overruled. In due course thereafter they sued out a writ of error to the Supreme Court, which was granted.

The controlling questions on this appeal involve paragraph 6 of the general charge of the court, and special charge No. 2, requested by Zundelowitz in connection therewith, and refused by the court. Said paragraph No. 6 is as follows:

"If you find and believe from the evidence that Ed Waggoner did make the representations as alleged by A. Zundelowitz, and that said representations were false, and that said Ed Waggoner knew them to be false, and that A. Zundelowitz did rely upon the same, and was induced thereby to sell said lease to the said Waggoner, nevertheless, if you further find and believe from the evidence that A. Zundelowitz discovered the falsity of said representations, if they were false, before he signed the transfer of said lease to the said Waggoner, and, having said knowledge and knowing the falsity of said representations, if they were false, signed and delivered the transfer of said lease to the said Waggoner, you will find for the defendants."

Said special charge No. 2 is as follows:

"In connection with paragraph 6 of the court's charge, you are charged that, before you can find for the defendants under said paragraph, you must believe that A. Zundelowitz, before he executed and delivered the transfer of the lease, knew all the facts with reference to the transaction; that is, he must have known that the representations were false, and he must have known that Ed Waggoner at the time said representations were made knew the facts with reference to said well, or had information with reference to same, and failed to communicate the facts within his knowledge, and it would not be sufficient simply for you to find that A. Zundelowitz had information before he made said transfer that the well had been brought in."

The Court of Civil Appeals, apparently ignoring the fact that both the pleadings and evidence account for many fraudulent representations as being involved in the issue of waiver, or ratification of the alleged fraud, limits its discussion of the correctness of the above charge to only one phase of the testimony, to wit: Zundelowitz testified:

"I wanted to set this trade aside because he [Waggoner] said it was to be a dry hole, and on the basis of that he was going to sell it. It made a big difference to me whether it was going to be a dry hole. If I had known the well was a producing well, I would not have sold it for $37.50."

In line with the above limitation of the evidence, said court announces the following general principles of law:

"1. Ordinarily, misrepresentation of a material fact will be sufficient to support an action for fraud, whether the person making it knew that it was false or not. One making a statement of fact as a basis of negotiations is bound to know whether it is true, and bad faith is not in such cases a necessary element of an action for fraud. In this case, however, the statement in reference to the well was made in the form of the expression of an opinion, and it is generally true that a statement of an opinion will not form the basis of an action for fraud. There are exceptions to this rule, however. Where an opinion is expressed for the purpose of deceiving as to a matter which has within the knowledge of the person expressing it ceased to be a matter of opinion, and is thereby made the means of a misrepresentation or concealment of a fact, it may form the predicate for actionable fraud. Houston v. Darnell Lumber Co., 146 S. W. 1063; Olston v. Oregon Water Power & R. Co., 52 Or. 343, 96 Pac. 1095, 97 Pac. 538, 20 L. R. A. (N. S.) 926; 20 Cyc. 18; 12 R. C. L. p. 248; Mudsill Mining Co. v. Watrous, 61 Fed. 163, 9 C. C. A. 415.

"2. Fraud which renders a contract voidable may be waived or condoned, and the contract ratified by the party defrauded, but acts relied upon as ratification must be done after the person defrauded 'has obtained full knowledge of all the material facts involved in the transaction, has become fully aware of its imperfection and of his own rights to impeach it, or ought and might, with reasonable diligence, have become so aware.' 2 Pomeroy (3d Ed.) par. 964; North American Accident Insurance Co. v. Miller, 193 S. W. 758; Ingram v. Abbott, 14 Tex. Civ. App. 583, 38 S. W. 626; Black on Rescission and Cancellation, par. 591.

"3. If bad faith on the part of Waggoner in making the representation as to the well was material in determining whether fraud had been committed, it necessarily follows that knowledge on the part of Zundelowitz as to such bad faith was also a material fact in determining whether he had waived the fraud by executing the transfer. The charge of the court does not therefore correctly present the issue of ratification as made by the evidence. This was called to the court's attention, both by objections to the charge and by the request for instructions referred to. We think the charge requested should have been given."

Said court assigns no other reason for reversing and remanding the judgment of the trial court.

According to the view of the Court of Civil Appeals, before Zundelowitz can be held to have waived the alleged fraud, three things were necessary: (1) False representations must have been made; (2) Waggoner must have known that they were false when he made them; (3) Zundelowitz must have known, not only their falsity, but also that Waggoner knew they were all false when made.

[1] If none of the alleged misrepresentations involved an opinion, but all were statements of actual facts, then we are sure no one will contend for a moment that paragraph 6 of the court's general charge is erroneous, so far as Zundelowitz is concerned. Numerous authorities can be cited in support of this proposition, but we content ourselves by referring to a very excellent opinion by Justice Lurton of the United States Circuit Court of Appeals in the case of Simon v. Goodyear Metallic Rubber Shoe Co., 105 Fed. 573, 44 C. C. A. 612, 52 L. R. A. 745. In that case, the very contention Zundelowitz here makes was before the court. It is also true that the facts in that case are similar to those in the case at bar, in that in each case there was a preliminary contract, binding on its face. That court, speaking through the distinguished jurist above named, said:

"But it is said that plaintiff did not have full knowledge of the deceit, in that he did not know before full performance that Rodenbach or his principal knew the falsity of his representations, and that this fact was not discovered until it came out in the evidence in this case. But plaintiff did discover as early as May, 1895, that the factories which had been operated before April 18, 1895, by the Rubber Reclaiming Company were in full operation, each for itself, and that each was in the market, actively competing for old rubber waste. The actionable misrepresentation, upon plaintiff's theory of the case, was that these factories were out of business, and therefore would not be competitors in the market for the material he undertook to collect and sell to plaintiff. It was not of the essence of his case that Rodenbach knew his representations to be false. If he made the representation, which it is claimed he did make, with the purpose of procuring the contract in question, and with the intent that the plaintiff should act upon it, without knowledge as to whether it was true or not, it would be a false representation within the rule. Cooper v. Schlesinger, 111 U. S. 148; 155, 4 Sup. Ct. 360, 28 L. Ed. 382; Iron Co. v. Bamford, 150 U. S. 665, 14 Sup. Ct. 219, 37 L. Ed. 1215. Fraud is not waived unless there be conduct inconsistent with a purpose to disaffirm the contract after full knowledge of the facts which constitute the fraud, and raise an election whether the defrauded party will go on with the contract, or disaffirm what has been done. Mining Co. v. Watrous, 9 C. C. A. 415, 61 Fed. 163; Alger v. Keith (decided by this court November 7, 1900) 105 Fed. 105; Moxon v. Payne, 8 Ch. App. 881. But full knowledge of a fraud does not mean that the party defrauded shall have knowledge of all of the evidence tending to prove the fraud. If he have knowledge of the material facts which go to make up the case of deceit as practiced upon him, it is sufficient to make him elect whether he will go on with the contract, or stop short and sue for the loss he has already suffered. Bach v. Tuch, 26 N. E. 1019, 126 N. Y. 53.

"When the plaintiff learned, as he did in May, 1895, that the several factories which had been operated by the Rubber Reclaiming Company had not gone out of business of reclaiming old rubber, but were actively prosecuting that business, and in the market, each for itself, competing for waste rubber, he knew the material facts which went to make his case for deceit. By thereafter deliberately proceeding with the execution of the contract, he waived the deceit and affirmed the contract. Upon this ground the direction to the jury to find for the defendant was correct, and the judgment is accordingly affirmed."

[2, 3] The only misrepresentation which could possibly be construed as being merely an opinion is the one centered upon by the Court of Civil Appeals. On cross-examination, Zundelowitz testified that Waggoner said, in speaking of the new well, "that it was to be a dry hole, and on the basis of that, he was going to sell it." This was not an expression of an opinion. It was a statement of fact, based upon apparent knowledge. It was not a statement that it looked like a dry hole, or might be one. He is alleged to have said, "it was to be one." We doubt if any of the misrepresentations involved only an opinion. If it be said that Zundelowitz contradicted himself on the exact language used by Waggoner, then the jury should have been asked to pass upon which part of his testimony was true, and, therefore, whether a statement of fact or only an opinion. No such instruction was requested by Zundelowitz. In any event, as most of the alleged misrepresentations were, undoubtedly, not matters merely of opinion, paragraph 6 of the court's charge was correct, in the absence of an objection by counsel for Zundelowitz that it did not distinguish between the kinds of misrepresentations and apply the law accordingly. No such objection is found in the record. The objections were that the charge was erroneous because it did not require that Zundelowitz know that Waggoner knew all the representations were false when made. Therefore paragraph 6 must stand, as we view it.

[4] Paragraph No. 6 of the general charge of the court requires that Zundelowitz must have discovered the falsity of all the representations of Waggoner, and not merely his material representations, before the former could be held to have waived said fraud. That charge was prejudicial to Waggoner, but Zundelowitz cannot be heard to complain.

[5] But, admit, for the sake of argument,

that Waggoner told Zundelowitz the well was likely to be a dry hole, and that said statement was an opinion, and not one of fact, we still believe paragraph 6 of the court's general charge correct, and that it was not necessary for said charge to include an instruction that Zundelowitz's waiver of this fraud depended upon his knowledge that Waggoner knew he was falsifying when he made his representations.

There is an authority of excellent standing which has passed upon the very contention made in this connection by counsel for defendant in error. The Supreme Court of California, in a very recent case, has expressly overruled the same in a very similar fact case. See Thomas v. Birch, 178 Cal. 483, 173 Pac. 1102. In that case, the majority stockholders of an oil company decided to discourage the minority stockholders, depreciate the value of the stock of the corporation, and buy them out for a nominal consideration. The company had four small producing wells. A fifth was being drilled, and when nearing completion it made a very favorable showing for a large producer. It finally came in that way, but was purposely choked off by the conspirators. In April, 1911, the injured parties sold their stock, having given an option on it about 60 days before. The plaintiffs admitted that they knew about the value of this well No. 5 before they finally sold their stock, but said they did not know that the conspirators had practiced their fraud upon them until two years later. The trial court sustained a general demurrer to the petition, and the Supreme Court of California affirmed that action. The court held that the evidence showed that plaintiff, before finally selling the stock, knew that well No. 5 had been opened for production, and all about the value thereof, and the effect of its development upon the value of the stock, and that nothing else was material. We quote from the court's opinion in the California case as follows:

"A binding contract arose for the first time when Birch, on April 18, 1911, made payment and took the stock. But the plaintiff's own pleading alleges that on April 10, 1911, eight days before payment of the purchase price, he learned that well No. 5 had been opened for production, and the further allegations, fairly construed, amount to an admission that he then learned all about the well and its value and the effect of its development upon the value of the shares. At that time it was still within his power to revoke the option and retain his stock. Instead of so doing, he allowed the defendant to go on and consummate the purchase, took the agreed price, and then, after a lapse of some three years, charges fraud in a transaction which he voluntarily carried into effect, after full knowledge of the facts. This he cannot do."

In the case just about quoted, the conspirator expressed an opinion, just as in the case at bar. He said that well No. 5 would not be a good producer. It is exactly like the present case on the facts. The only difference in the cases is that the California court held that the conspirators had no option on the stock binding upon its face. We have considerable doubt about the binding effect of the option in the instant case, but we waive that, and admit for present purposes, that it is binding. We do not think its binding effect is material, and we believe that the California court would have rendered the same decision, had the option in that case been binding. In discussing this very proposition, that court said:

"Strong authority may be cited for the view that, even if there had been a contract of purchase and sale, binding upon both parties, the seller could not, where he discovered the fraud while the contract remained wholly executory, deliver the property and receive the purchase price, and still maintain an action for damages for the fraud. McDonough v. Williams, 77 Ark. 261, 92 S. W. 783, 8 L. R. A. (N. S.) 452, 7 Ann. Cas. 276; Thompson v. Libby, 36 Minn. 287, 31 N. W. 52; Baird v. Mayor of N. Y., 96 N. Y. 567, 576. In Thompson v. Libby, supra, the court said: 'To allow a person who has discovered the fraud while the contract is still wholly executory to go on and execute it and then sue for the fraud looks very much like permitting him to speculate upon the fraud of the other party. It is virtually to allow a man to recover for self-inflicted injuries.' It is not necessary, for the purposes of the present case, to go so far."

In connection with the practice of permitting a person, after knowledge that he has been the victim of false representations, to go ahead with an executory contract, and then try to "rue back," we are in accord with the United States Circuit Court of Appeals in the case of Kingman v. Stoddard, 85 Fed. 740, 29 C. C. A. 413. The court there says:

"For example, if one by the imposition of fraudulent practices has been induced to purchase goods, and after their receipt discovers the fraud, he may rescind, or may affirm and have his action for the deceit. But if, before delivery of the goods, he has discovered the fraud, he may not then accept the goods, and still have an action for deceit. He had sustained no injury prior to the discovery of the fraud. He was under no legal obligation to execute a contract imposed upon him through fraud. Fraud without damage, fallen or inevitable, is not actionable. The loss arises from his acceptance of the goods. This being done with knowledge of the fraud, he has voluntarily brought upon himself the injury. 'Volenti non fit injuria.' With respect to an executory contract voidable by reason of fraud, the defrauded party, with knowledge of the deceit practiced upon him, may not play fast and loose. He cannot approbate and reprobate. He must deal with the contract and with the wrongdoer at arm's length. He may not, with knowledge of the fraud, speculate upon the advantages or disadvantages of the contract, re-

ceiving its benefits, and at the same time repudiate its obligations. Grymes v. Sanders, 93 U. S. 55, 62; McLean v. Clapp, 141 U. S. 429, 12 Sup. Ct. 29. Fraud is not actionable when the defrauded party, before performance and after knowledge of the fraud, voluntarily ratifies and exacts performance of the contract by the other party thereto."

Paragraph 6 of the court's charge was onerous enough on the plaintiffs in error, in our judgment, whether the representations were matters of fact or opinions. For the same reason, special charge No. 2, requested by Zundelowitz, would have been erroneous.

[6] Further, if it be held that this particular representation about the dry hole was an expression of an opinion only, then we doubt if it was material in any event, for it probably could not be the basis of an action for fraud. The Court of Civil Appeals announces some rules in this connection, and in support thereof cites, among other cases, that of Mudsill Mining Co. v. Watrous et al., 61 Fed. 163, 9 C. C. A. 415. Justice Lurton, in that case, lays down the following rules in this same connection, with which we are in hearty accord. He says:

"It is perhaps too well settled to admit of controversy that a misrepresentation, in order to constitute fraud, must be an affirmative statement of some material fact, and not a mere expression of an opinion. Gordon v. Butler, 105 U. S. 553; Development Co. v. Silva, 125 U. S. 247, 8 Sup. Ct. 881. This distinction between the misrepresentation of a fact and the expression of an opinion is peculiarly applicable in the sale of a property so speculative and uncertain as a silver mine. In Jennings v. Broughton, 17 Beav. 234, which was a case brought to set aside the sale of shares in a mining venture on account of fraud in the sale. Knight Bruce, L. J., said: 'First, in the statements or representations concerning the mine, was there any untrue assertion material in its nature; that is to say, which, taken as true, added substantially to the value or promise of the mine, and was not evidently conjectural merely?'

"The representations made verbally, and which it is alleged were false, related alone to the average richness of the exposed body of ore. Though in form the affirmation of a fact, yet, when applied to the subject-matter of the negotiation, it was in its very nature conjectural, and amounted to an expression of opinion. But this rule that a mere expression of an opinion will not constitute fraud must not be pushed beyond the reason for the rule. If a false statement is to be given immunity because it is mere 'puffing' or 'trade talk,' and only the expression of an opinion, it is because the party to whom the opinion is addressed has no right to rely upon the mere expression of an opinion, and is assumed to have the ability and opportunity of forming his own opinion and coming to an independent judgment. In speaking of the difference between the legal effect of a representation as to a fact and the expression of an opinion, Mr. Pomeroy says: 'The reason is very simple: While the person ad-

dressed has a right to rely on any assertion of a fact, he has no right to rely upon the mere expression of an opinion held by the party addressing him, in whatever language such expression be made. He is assumed to be equally able to form his own opinion, and to come to a correct judgment in respect to the matter, as the party with whom he is dealing, and cannot justly claim, therefore, to have been misled by the opinion, however erroneous it may have been.' Pomeroy, Eq. Jur. par. 878.

"If, therefore, the party making false statements as to a matter conjectural in its character, and therefore relating to a matter of opinion, actively intervenes to prevent investigation and the discovery of the truth, and such intervention be effective in the concealment of the facts and in the deception of the buyer, a clear case of operative fraud is made out. In every such case immunity will not be extended to false expressions of opinion, upon the ground of 'puffing' or 'trade talk,' if it appear that the vendor has, by his conduct, prevented investigation, and induced reliance upon the statements of the seller. In such a case the subsequent conduct of the seller in actively preventing the buyer from the formation of an independent opinion so connects itself with the original misrepresentation as to become part and parcel of the false statement, and amounts in law to the false affirmation of a fact. A false representation may, and most often does, consist in language alone, expressed or written; but it may also consist in conduct alone, or external acts. Whenever the purpose is to induce belief in the existence of a fact which does not exist, every word and act intended to produce conviction and induce action becomes a misrepresentation if, through their instrumentality, the party upon whom they are practiced is induced to act. 2 Pom. Eq. Jur. § 877. The gravamen of the alleged fraud lies in the allegation that when the complainants undertook to examine this property, and form an independent judgment as to its value, through the active and willful intervention of defendants, their samples were rendered untrustworthy by the secret admixture of silver in a form in which it did not exist in this mine; that the purpose was to give to these samples, otherwise representative of the average value of the ore in sight, a false and fictitious value, which would confirm the untrue statements expressed theretofore as to the silver contents of the mine. Now, it must be evident that, if this was done, a most abominable fraud was practiced, and that no court would suffer a contract resting upon such a foundation to stand."

It will be seen that the liability in the case just quoted was based, not alone upon the fraudulent representations expressing an opinion, but also upon the active and operative fraud thereafter practiced by defendants in "salting" the mine and preventing a fair test. In the case at bar, it became the duty of Zundelowitz to investigate this opinion expressed by Waggoner. If he did not do so, he could not predicate a case of fraud thereon. If he had made such an investigation, Waggoner would still not have been liable, because of said opinion representation,

unless he had gone further and done something to prevent Zundelowitz from making a fair test of said well. As the latter made no effort to inform himself about the well, and as Waggoner did nothing to prevent his doing so, we are of the view that said representation was immaterial, and could have been eliminated entirely. Paragraph 6 of the court's charge was not required to take it into account.

[7] If the jury found, under paragraph 6 of the court's charge, that Zundelowitz discovered the falsity of Waggoner's representation that the well looked like a dry hole, then that inevitably led to the conclusion, as we see it, that Zundelowitz knew that Waggoner knew it was false when made. On the same day the representation was made the well came in. It was not a dry hole. Waggoner was an experienced oil man and scout. He kept up with the news in matters of that kind. The whole town was excited. Zundelowitz, knowing the representation was false, must have known that Waggoner was not innocent in that connection. For this reason, Zundelowitz was not prejudiced, in any event, by failure of the court to charge that he must have known that Waggoner knowingly falsified before he could be adjudged guilty of waiver.

It seems to be the theory of counsel for Zundelowitz that the latter was bound by the option contract; that he could not take any steps to rescind the same until he knew of some fraud on the part of Waggoner authorizing the rescission; that such rescission could be based only upon the theory that Waggoner knowingly told an untruth when he said the well looked like a dry hole; that the jury should have been instructed that his act in executing the final contract could not be a waiver of his right of rescission, unless he knew beforehand of Waggoner's bad faith.

[8] Without abandoning any of our views already expressed, let us concede for the purpose of the discussion that the waiver by Zundelowitz did depend upon his knowledge of the fraud of Waggoner in making said representation about the dry hole. The jury returned its verdict upon one or both of the following theories: (1) That no false representations were made; (2) that if they were made Zundelowitz discovered the falsity thereof before signing the final transfer, and waived the said fraud. If the verdict was upon the former theory, then the charge on waiver prejudiced no one. If it was upon the latter theory, we must assume that the jury found that Zundelowitz knew there was a fine well out there near this lease before he executed the final contract, and that Waggoner had told him an untruth the afternoon before, in saying that it was to be a dry hole. Paragraph 6 of the court's charge required the jury to find that much. It did not require much stretch of the imagination for Zundelowitz to go a step further and conclude that Waggoner knew the false statement was false when he made it. Viewing the matter as ordinarily prudent persons would, we think the information Zundelowitz did have was enough to require him, as a matter of law, to delay the final execution of his assignment until he could inquire into those matters, and see if he had a right to rescind his option contract. He says Waggoner told him Sunday afternoon that the well looked like a dry hole. Early the next morning, he was advised by others that it was a good producing well. It had come in on Sunday, and possibly Saturday before. It was the talk of the town. Under these circumstances, it became his duty to make further inquiry before closing the deal. He did not do so, but went ahead and signed the transfer. When he did that, he ratified and waived the fraud, and special charge No. 2, requested by his counsel, was immaterial. The general charge was sufficient.

[9] At any rate, if he was not required, as a matter of law, to pursue his inquiry, after getting all that information, the special charge in this connection should have been so framed as to submit to the jury the question as to whether or not the knowledge he already had was sufficient to put him upon inquiry before executing the final transfer. Only in the event they answered that in the negative should the jury in any case have been told that the waiver depended upon knowledge by Zundelowitz of the bad faith of Waggoner. The special charge did not so provide and it was, in any event, properly refused.

[10] Said special charge is, of course, in error in not confining the necessity of Zundelowitz's knowledge of Waggoner's bad faith to the one representation involving only an opinion.

[11] Not only was special charge No. 2 erroneous in the respects above mentioned, and therefore properly refused by the trial court, but it was further contended that it was erroneous in this: Said special charge required that Zundelowitz know "all the facts with reference to the transaction," before he could be held guilty of waiver in executing the final assignment. The Texas courts have never announced any such law. From the very beginning, the only knowledge required is of the material facts. See Mitchell v. Zimmerman, 4 Tex. 75, 51 Am. Dec. 717; Lemmon v. Hanley, 28 Tex. 219; Jackson v. Stockbridge, 29 Tex. 394, 94 Am. Dec. 290; Carson v. Kelley, 57 Tex. 379; Miller v. Jannett, 63 Tex. 82; Putman v. Bromwell, 73 Tex. 465, 11 S. W. 491; Barrett v. Featherstone, 89 Tex. 567, 35 S. W. 11, 36 S. W. 245; Downes v. Self, 28 Tex. Civ. App. 356, 67 S. W. 897; Furneaux v. Webb, 33 Tex. Civ. App. 560, 77 S. W. 828; Katzenstein v. Reid & Co., 41 Tex. Civ. App. 106, 91 S. W. 360.

In fact the Court of Civil Appeals seem

to take no issue with the authorities on this point. In approving the special charge in this connection, that court says:

"We do not think that this omission vitiates the charge, as this qualification would be implied; besides, the explanation which follows this general statement in the charge leaves no room for mistake as to the meaning thereof."

We think the other matters discussed in this opinion control the case, and that it is not necessary to pass upon the correctness of the views of the Court of Civil Appeals just above quoted, and we do not do so.

[12] Furthermore, we are of the view that said special charge is clearly upon the weight of the evidence, and should not have been given. This charge states, as a matter of law, that a certain fact is material, and a certain other fact, taken alone, is not material. The most that Zundelowitz could contend for would be to have the jury pass upon the materiality of certain facts and representations. Ordinarily, this is the province of the jury in cases of this kind. This charge, in two respects, deprives the jury of that privilege. We refer to the case of Evans v. Goggan, 5 Tex. Civ. App. 129, 23 S. W. 854. In that case, the court says:

"It was not proper for the court to instruct the jury that a given fact—the one stated in the charge—would constitute ratification. The jury had the right to look at all the facts showing the true effect of the use of the piano. It may be that the fact stated would be deemed by the jury as sufficient, or that it, considered with other facts, was not sufficient. We are constrained to say that the charge was not the law of the case."

[13] It is elementary that a special charge should be refused unless correct in all its parts. The trial court is under no obligation to separate the correct from the incorrect portions. For the many reasons stated, the trial court, in our judgment, properly refused said special charge.

[14] This was peculiarly a fact case. There was sharp conflict in the testimony. Zundelowitz had his chance before the jury, and we think the charge of the court was more than fair to him. As a matter of fact, he never did testify to anything which would indicate that he was influenced in the final execution of the assignment by his knowledge, or lack of knowledge, of Waggoner's bad faith in making the representations. Zundelowitz assigned several inconsistent reasons as the cause of his desire to rescind the Waggoner assignment. After a careful analysis of the testimony we are inclined to the view that, if his testimony was true, he gave the real reason when he said he executed the option, relying upon Waggoner's promise to share the profits with him on a resale. He testified that Waggoner promised to give him all over the $37.50 per acre that

his one-fourth interest should sell for. If that had been true, then the $37.50 per acre was only a matter of form, and Zundelowitz did not care how good a well had come in on the Burnett ranch. In fact, the better the well, the more his profits would be. He stated that some one told him, after the final transfer had been signed, that Waggoner would not be fair and carry out that agreement about the profits; that he believed said latter statement, and began to take action accordingly. Believing that, as he says he did, and hearing that the lease had sold for $300 per acre, we assume that he was unwilling to see others make that much out of his former holdings. If we are correct in this view, then none of the other representations induced the contract, and therefore were not in the case. But we gladly concede to the jury the privilege and duty of passing upon these facts in evidence and settling the conflicts therein. They performed their duty under a charge of the court, against which Zundelowitz had no cause to complain. They have spoken, and we think the judgment of the trial court, reflecting their verdict, should be affirmed.

Therefore we recommend that the judgment of the Court of Civil Appeals be reversed, and that of the district court affirmed.

PHILLIPS, C. J. The judgment recommended in the report of the Commission of Appeals is adopted and will be entered as the judgment of the Supreme Court.